## DYNAMICS RESEARCH CORPORATION,
### Appellant,

v.

## LANGENAU MANUFACTURING COMPANY, Appellee.

### Appeal No. 83-543.
### Opposition Nos. 59,241, 59,402.

United States Court of Appeals,
Federal Circuit.

April 12, 1983.

Paul J. Hayes, Boston, Mass., for appellant.

Stephen A. Hill, Cleveland, Ohio, for appellee.

Before FRIEDMAN, NICHOLS and MILLER, Circuit Judges.

FRIEDMAN, Circuit Judge.

This is an appeal from a decision of the Patent and Trademark Office Trademark Trial and Appeal Board (the Board) dismissing the appellant's oppositions to the appel-

lee's applications to register the same trademark that the appellant previously had registered. The Board held that because the marks are used on goods that are "quite different" and sold to different, discriminating customers, there is no likelihood of confusion from the appellee's use of the mark. We affirm.

## I.

A. For a number of years, the appellant, Dynamics Research Corporation (Dynamics), has sold various goods and services under its registered mark "DRC" (first registered as No. 707,199 in 1960). Two of its major products, which have constituted approximately 40 percent of its business, are encoders and numerically controlled back gauges for press brakes. These are sold to the machine tool industry. The purchasers include manufacturers of press brakes and sheet metal fabrication shops.

The appellee, Langenau Manufacturing Company (Langenau), produces a sheet metal fabric using a process called "double reverse corrugation." The appellee offers this fabric for sale under the mark "DRC," apparently deriving the mark from the first letter of each of the three words describing the process. The principal purchasers of the fabric are state highway departments, for use as glare screens, and airport authorities, for use as blast fencing. Langenau applied for registrations of the mark "DRC" on August 30, 1976, and of "DRC" and a design on October 12, 1976, both for corrugated sheet metal. Dynamics opposed Langenau's registration of these marks, claiming that its use would be likely to cause confusion between Langenau and Dynamics products.

In order to inform potential customers of the availability of its double reverse corrugated sheet metal fabric, Langenau submitted press releases to various magazines that serve the metal fabrication industry. The releases—which Dynamics describes as advertisements—were printed as articles in such magazines as *Steel, Iron Age, American Metal Market, Metal Finishing,* and *Design News.* The magazines in which the articles appeared are apparently read in the machine tool industry where Dynamics sells its products under the "DRC" mark.

B. The Board found that Langenau's goods were "quite distinct" from those of Dynamics, and that Langenau offered them not to an uneducated public that could not distinguish between their sources, but to large corporations and government agencies, whose purchasing agents have sufficient expertise to distinguish between the sources of the goods. The Board concluded that

> the customers of the respective products do not appear to be the same and any overlap in purchasers or customers is de minimis. . . . [In] those instances where the same customers might be exposed to both applicant's and opposer's goods sold under the identical mark, there would not be any likelihood of confusion as to the source of the goods in view of the nature of the goods involved and the nature of the purchasers who would be responsible for acquisition of the products.
>
> . . . [The] goods of the respective parties are sufficiently distinct that their marketing under identical marks would not be likely to cause confusion, mistake, or to deceive.

## II.

The appellant argues that under *Philip Morris, Inc. v. K2 Corp.,* 555 F.2d 815, 194 USPQ 81 (Cust. & Pat.App.1977), the use of identical and arbitrary marks on different goods of different producers that are advertised in the same magazines is sufficient to establish the likelihood of buyer confusion, and that under this rule the Board was required to find likelihood of confusion in this case. The appellant's argument rests upon a misreading of *Philip Morris.*

*Philip Morris* involved an application by that company to register the mark "K2" for cigarettes. The application was opposed by

the K2 Corporation which, for a number of years before the application was made, had used its registered identical mark for snow skis. The Board sustained the opposition, holding that there was a likelihood of confusion.

The Board's decision rested on several factors.

1. Philip Morris had sponsored professional ski races under the name of "Benson & Hedges" (a registered trademark for one of its brands of cigarettes), at which both the marks "Benson & Hedges" for cigarettes and "K2" for skis were "prominently and repeatedly displayed." This display of the two marks, together with the attendant publicity and television coverage of the races, "fostered an association [in the public's mind] of cigarettes with professional ski racing." *K2 Corp. v. Philip Morris, Inc.,* 192 USPQ 174, 177 (T.T.A.B.1976).

2. Philip Morris "is a major conglomerate corporation engaged in the marketing and selling of ... diverse products," the "variety and scope" of whose operations

> contribute to the likelihood that applicant's use of the trademark "K2" for cigarettes would be perceived as an indication of an extension of its commercial interests to sporting goods (which would be reinforced by applicant's long affiliation with sporting events) and the subsequent use of an acquired mark for a new brand of an established line of products. There would be the appearance of a commercial link to the source of the skis and skiing equipment which has been sold for many years, commencing from a time long prior to the earliest use of "K2" by applicant, under the identical "K2" mark and in association with a trading name of which "K–2" is the dominant and distinctive feature.

*Id.* at 178–79.

3. "The fact that skis and skiing equipment and cigarettes have been advertised in the same magazines, and have therefore been promoted in part to the same market-

ing audience at the same time, enhances the probability that misunderstandings will occur." *Id.* at 178.

In affirming the Board, the Court of Customs and Patent Appeals did not rest its decision upon the fact that the different goods referred to by the identical and arbitrary mark "are advertised in the same magazines." It pointed out that

> Other facts peculiar to this case, as fully set forth in the board's opinion, indicate that consumers would be more likely to make an assumption of common source or sponsorship than would otherwise be the case. Appellant is a diversified company in an industry apparently known for its diversification. It has in the recent past associated cigarettes and skiing by sponsoring widely publicized skiing events, which it chose to name after one of its well-known brands of cigarettes, Benson & Hedges. Appellee K2 Corporation sponsored skiers at these events and its "K2" mark was prominently displayed. On these facts, consumers could very well assume related origins for the involved goods for reasons fully developed by the board ....

*Philip Morris, Inc. v. K2 Corp.,* 555 F.2d at 816, 194 USPQ at 82.

The Board, in *Philip Morris,* thus based its holding of likelihood of confusion upon all the facts of that case rather than on the fact of common advertising alone. In affirming, the court similarly held only that, considering all the facts, it could "find no error in the board's ultimate conclusion." *Id.*

In the present case, we also find no ground for rejecting the Board's finding that, on the overall facts of this case, prospective purchasers of goods under applicant Langenau's mark were unlikely to be so confused as to think that the source of those goods was Dynamics. The determination of likelihood of confusion depends upon all the facts of the particular case. *E.g., Georgia-Pacific Corp. v. Great Plains Bag Co.,* 614 F.2d 757, 760, 204 USPQ 697, 699

(Cust. & Pat.App.1980). Unless we were to substitute our judgment for that of the Board on the weight to be accorded the various facts—which we decline to do—we have no basis for upsetting its conclusion.

The order of the Trademark Trial and Appeal Board dismissing the oppositions is affirmed.

AFFIRMED.