**In re N.A.D. INC., also trading as North American Drager.**

**Appeal No. 84–1215.**

United States Court of Appeals, Federal Circuit.

Feb. 14, 1985.

---

Stanley H. Cohen (argued), Caesar, Rivise, Bernstein & Cohen, Ltd., Philadelphia, Pa., for appellant.

Harris A. Pitlick (argued), Associate Sol., Arlington, Va., for appellee. With him on brief were Joseph F. Nakamura, Sol., and John W. Dewhirst, Associate Sol., Washington, D.C.

Before FRIEDMAN, RICH and BENNETT, Circuit Judges.

RICH, Circuit Judge.

This appeal is from the February 29, 1984 decision of the United States Patent and Trademark Office (PTO) Trademark Trial and Appeal Board (board), 221 USPQ 1115, affirming the PTO Trademark Attorney's refusal to register a trademark by reason of 15 U.S.C. § 1052(d), section 2(d) of the Trademark Act of 1946. We reverse.

The mark sought to be registered is NARKOMED. The goods named in the application are "anesthesia machines for use in surgery." Application to register was filed May 7, 1980, alleging first use April 3, 1972. The rejection is predicated on two prior registrations: (1) Reg. No. 982,657, April 23, 1974, or NARCO MEDICAL SERVICES for "rental and leasing of hospital and surgical equipment and consultation services relating to the operation of such equipment." This service mark registration issued to Air-Shields, Inc. and on April 26, 1978 was assigned to Narco Scientific Industries, Inc. (2) Reg. No. 1,036,695, March 30, 1976, of NARCO and design (see board opinion for illustration) for a long list of specialized medical equipment including, as most relevant here, "apparatus for administration of anesthesia." This registration issued to Narco Scientific Industries, Inc. which changed its name to Narco Scientific, Inc. The board opinion contains the full list of goods named in the registration.

The examining attorney and the board were both of the view that registration must be refused under § 2(d) [1] because, in

1. "No trademark by which the goods of the applicant may be distinguished from the goods

their commonly held opinions, on which they had no doubts, "confusion between the applicant's mark and the cited registered marks is likely," to quote from the board's opinion. Applicant's arguments relying on differences in the marks, sophistication of purchasers of the equipment or services, and the high prices thereof were summarily dismissed as "not persuasive." As to registration (2), supra, there is no question that identical goods are named by both applicant and registrant. As to the services in registration (1), they are clearly closely related to applicant's goods, all being in the medical equipment field.

As this court and its predecessor, the Court of Customs and Patent Appeals, have often said, each likelihood-of-confusion trademark case must be determined on its own facts. *Curtice-Burns, Inc. v. Northwest Sanitation Products, Inc.*, 530 F.2d 1396, 1399, 189 USPQ 138, 141 (CCPA 1976). Beside that, however, the salient feature of this case is an argument, which has several times been fully dealt with in earlier cases, based on agreements between appellant and the owner of the prior registrations relied on to support the rejection containing a consent to the use and registration of NARKOMED by appellant.

The agreements containing the consent to use and register came about as follows. Applicant-appellant, N.A.D., Inc., which also does business as North American Drager, is a Pennsylvania corporation the majority of the stock of which is owned by Draegerwerk AG, of Luebeck, Federal Republic of Germany. Draegerwerk AG brought cancellation proceedings to cancel the two reference registrations herein, now both owned by Narco Scientific, Inc. These cancellations were inter parties proceedings extending over several years in which competitors in a relatively restricted field were involved, the disputes involving

many marks other than NARKOMED. By written settlement agreements, Draegerwerk AG and N.A.D. undertook to abandon certain pending trademark registration applications and to discontinue the use of four different NARKO- marks, provision being made for a phasing-out period. Money changed hands. In the course of it all, the other party, Narco Scientific Inc., owner of the two references, expressly acknowledged N.A.D.'s right "to the use and registration of the trademark NARKOMED ... for use in the sale of hospital and medical equipment." The first agreement so providing was in November 1975 and the second one, reaffirming that provision, was in September 1979. While we are uninformed as to all the details of the disputes and negotiations, these competitors clearly thought out their commercial interests with care. We think it highly unlikely that they would have deliberately created a situation in which the sources of their respective products would be confused by their customers. As was said by our predecessor court in *In re E.I. duPont de Nemours & Co.*, 476 F.2d 1357, 1362, 177 USPQ 563, 568 (CCPA 1973), "It can be safely taken as fundamental that reputable businessmen-users of valuable trademarks have no interest in *causing* public confusion."

The Examining Attorney, while citing *DuPont* and saying that "great weight is to be accorded consent agreements," interpreted that case, erroneously, as allowing registration only "where the goods of the respective parties were disparate, and the markets and trade channels were different." She held that "Notwithstanding an agreement between the parties, the likelihood of confusion cannot be avoided." She concluded that "refusal of registration is appropriate notwithstanding the consent agreement. *Drums Ltd. v. Drums Unlimited*, 210 USPQ 222 (TTAB,

---

of others shall be refused registration on the principal register on account of its nature unless it—

    *    *    *    *    *    *

(d) Consists of or comprises a mark which so resembles a mark registered in the Patent and

Trademark Office ... as to be likely, when applied to the goods of the applicant, to cause confusion, or to cause mistake, or to deceive...."

1981)." [2] In affirming, the board refused to give any weight to the contractual consent to use and to register, saying:

> An *appropriate* consent agreement can tip the scales in favor of an applicant *if there is doubt* as to the likelihood of confusion. * * * In light of the *fact* that no doubt exists [in the board's mind] and the parties have failed to *specify how* customer confusion can be avoided, we do not find that the consent agreement is an appropriate basis upon which to base registration. [Emphasis ours.]

Earlier in its opinion the board had said:

> As we stated in *In re Loew's Theatres, Inc.,* 197 USPQ 183 (TTAB 1977), to be persuasive that confusion is not likely, the agreement must show that there are differences in the goods and that the registrant and the applicant can and will remain clear of each other's marketing and trade channels so that there is no real likelihood that customers will be confused.

We note that the board cited no precedent other than its own opinion in *Loew's* for these novel and stringent requirements. An examination of the *Loew's* opinion shows, moreover, that it did not actually lay down any such definite rule but rather said that "the teaching of the *DuPont* and *United* cases is" that such an agreement as the board has here prescribed "may lead to a conclusion that there is no likelihood of confusion, mistake or deception of purchasers." The reference to *United* is to *In re United Oil Manufacturing Co.,* 508 F.2d 1341, 184 USPQ 490 (CCPA 1975). General rules should not be deduced from the fact situations in one or two cases, precluding the possibility that the same result may be attainable on quite different fact situations. The noteworthy fact here is that in both *DuPont* and *United* the CCPA *reversed* the board for not giving proper consideration to consents to registration by the owners of registrations relied on to support rejections under § 2(d). In neither of those cases of our predecessor court do we find the "teaching" that the board finds in them or any justification for the requirements for consent agreements that it has propounded in this case, with which we disagree.

■ Consents come in different forms and under circumstances in infinite variety. They are, however, but one factor to be taken into account with all of the other relevant circumstances bearing on the likelihood of confusion referred to in § 2(d). *Dynamics Research Corp. v. Langenau Mfg. Co.,* 704 F.2d 1575, 217 USPQ 649 (Fed.Cir.1983) (likelihood of confusion depends upon all the facts, or overall facts, of the case). The board spent much of its opinion analyzing and dissecting the *marks* in arriving at its opinion that *they* are "confusingly similar," and then finding it "axiomatic that confusion is likely when confusingly similar marks are used to identify closely related goods and services." We have never found anything axiomatic about the application of § 2(d) to fact situations, especially when consent agreements are involved. All aspects of the fact situation must be appraised and the situation judged as a whole.

■ In the present case, we start with the marks. They are not identical, as the marks have been in some other cases such as *DuPont, United,* and *Loew's.* Appellant's mark is NARKOMED; the reference marks are NARCO and NARCO MEDICAL SERVICES. An alert purchaser could readily distinguish them. We turn next to the goods. With reference to NARCO, there is identity; with reference to NARCO MEDICAL SERVICES there is not. The most that can be said is that appellant's anesthesia machines and Narco Scientific's rental and leasing services are both in the medical field. A most important factor, in our view, is the specific nature of appellant's goods. The record shows the machines to be elaborate, sizeable, complex pieces of technical apparatus of the kind

---

**2.** Strictly, there is no such case. The correct title is *In re Drums, Ltd.,* an ex parte case, like the present, in which the board pursued essentially the same line of thought it has applied here.

which would be purchased only in consultation with an anesthesiologist or someone with equivalent technical knowledge. In other words, only very sophisticated purchasers are here involved who would buy with great care and unquestionably know the source of the goods. There would be no likelihood of confusing source merely by reason of the similarity between NARCO and NARKOMED. *Cf. In re General Electric Co.*, 304 F.2d 688, 134 USPQ 190 (CCPA 1962) (VULCAN and VULKENE for commercial electrical wire held readily distinguishable). Another factor is the cost of appellant's apparatus. Though not of record, it would obviously be considerable—definitely not in the class of the cigarettes and smokers pipes involved in *Loew's*.

Taking all of the above facts into account, it is not at all surprising that the owner of the reference marks was willing to consent to the use and registration by N.A.D. Inc. of NARKOMED for "hospital and medical equipment." This consent, moreover, having been given by a competitor well acquainted with the realities of the business suffices to persuade us, when taken together with all of the other facts, that the board and the Examining Attorney were simply wrong in their opinions that there would be a likelihood of confusion, and we so hold. "A mere *assumption* that confusion is likely will rarely prevail against uncontroverted evidence from those on the firing line that it is not." *DuPont,* supra, 476 F.2d at 1363, 177 USPQ at 568.

The decision of the board affirming the refusal to register is *reversed*.

REVERSED.