**In re MASTIC INC., Appellant.**

No. 87–1058.

United States Court of Appeals,
Federal Circuit.

Sept. 30, 1987.

Robert McMorrow, Sughrue, Mion, Zinn, MacPeak & Seas, Washington, D.C., argued for appellant. With him on brief, was John H. Weber.

Nancy C. Slutter, Asst. Sol., Office of the Solicitor, Arlington, Va., argued for appellee. With her on brief, were Joseph F. Nakamura, Sol. and Fred E. McKelvey, Deputy Sol.

Before FRIEDMAN, Circuit Judge, BALDWIN, Senior Circuit Judge, and NIES, Circuit Judge.

NIES, Circuit Judge.

Mastic Inc. appeals from the final decision of the United States Patent and Trademark Office Trademark Trial and Appeal Board (TTAB) affirming a refusal to register the trademark SHURLOK for "vinyl siding" on the ground of likelihood of confusion with the registered mark SHURLOK for "roofing shingles," despite a consent by the owner of the registered mark to Mastic's registration. We affirm.

I

Under section 44 of the Lanham Act, 15 U.S.C. § 1126(b) (1982), a foreign national of a country which extends reciprocal benefits to a United States national

may obtain a registration based on its home registration. A section 44 applicant is excused from the statutory requirement that a mark must be used in commerce in or with the United States before such application is filed. Section 44(d)(2) of the Lanham Act, 15 U.S.C. § 1126(d)(2) (1982). An application under section 44 must, however, satisfy all other provisions of the Act including, *inter alia,* the requirement that the mark is not likely to cause confusion with a registered mark. Section 2(d) of the Lanham Act, 15 U.S.C. § 1052(d) (1982).[1]

Utilizing section 44, Mastic Inc., a Canadian corporation, applied for registration in this country of SHURLOK for vinyl siding, application Serial No. 538,301, filed May 17, 1985, based on its Canadian registration for the mark. No use of the mark in United States commerce was alleged. Registration was refused under section 2(d) of the Act because of likelihood of confusion with the registered mark SHURLOK for roofing shingles, Registration Nos. 570,483, issued February 10, 1953, and 1,246,380, issued July 26, 1983, owned by The Flintkote Company of Stamford, Connecticut. Mastic responded by submitting the following consent to registration on behalf of Flintkote:

The Flintkote Company is the owner of U.S. Registrations Nos. 570,483 and 1,246,380 covering the mark SHURLOK for roofing shingles. The Flintkote Company is aware of the use of the expression SHURLOK by Mastic Inc. in connection with the sale of vinyl siding and hereby consents to the registration of said mark by Mastic Inc.

The basis for this consent is that the parties have agreed after examination of their respective products and product marketing that there is no likelihood of confusion between the marks as applied to these respective goods. This agreement takes into account the following factors:

(1) The dissimilarity of the marks as applied to these specific goods;

(2) The noncompetitive and different nature of the products sold;

(3) The dissimilarity of the established, likely to continue, trade channels;

(4) The condition under which and buyers to whom the sales are made, i.e., roofing contractors on the one hand, and homeowners or building contractors on the other hand;

(5) The well-known character of the mark as applied to roofing materials by Flintkote;

(6) Neither party is aware of similar marks for similar goods in their respective fields;

(7) The lack of actual confusion between the marks;

(8) The length of time and conditions under which there has been concurrent use without evidence of confusion;

(9) The fact that both parties use their marks as product marks as opposed to house marks;

(10) The lack of market interface between the parties; and

(11) The *de minimis* character of any possibility of confusion.

In view of the above and for the reasons indicated, The Flintkote Company hereby consents to registration of SHURLOK for vinyl siding by Mastic Inc. in application Ser. No. 538,301.

On the basis of this letter of consent, Mastic urged that it was entitled to registration, arguing that it "closely tracks the guidelines for such letters set forth in *In re E.I. duPont deNemours,* 476 F.2d 1357, 177 USPQ 563 (CCPA, 1973)."

The examiner considered the consent but was unpersuaded to withdraw the section 2(d) rejection. Making of record numerous advertisements of building supply compa-

---

1. Section 2 provides in pertinent part:

No trade-mark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register on account of its nature unless it—

(d) Consists of or comprises a mark which so resembles a mark registered in the Patent and Trademark Office or a mark or trade name previously used in the United States by another and not abandoned, as to be likely, when applied to the goods of the applicant, to cause confusion, or to cause mistake, or to deceive....

nies which handle siding, including vinyl siding, and roofing shingles, and of contractors who offer both siding and roofing installation services, the examiner maintained his position, despite the consent, that the relevant public would be likely to attribute siding and roofing to a single source when sold under the identical mark SHURLOK. Mastic appealed to the board, arguing that, in view of the consent, the "assumption" of likelihood of confusion should not prevail.

The board affirmed the examiner's rejection. Since the marks are identical, the issue of likelihood of confusion turned upon the respective uses of the mark. The board noted that while roofing and siding are specifically different and noncompetitive products, both were used in the construction and repair of homes and small buildings and could be bought and installed by the same contractor, builder, or homeowner, as confirmed by the advertisements of record. The board also noted that no evidence was presented with respect to registrant's use, or even evidence that the applicant had ever used SHURLOK in this country. Per the board, the consent was a "naked" consent without any restrictions or limitations on either the applicant or registrant with respect to marketing channels, purchasers, or users. Thus, the board concluded that SHURLOK for vinyl siding and for roofing shingles would be likely to cause confusion and that Flintkote's consent to registration did not make confusion less likely.

## II

The issue is whether the TTAB erred in holding, on the entirety of the evidence, that applicant's use of SHURLOK for vinyl siding would be likely to cause confusion with the registered mark SHURLOK for roofing shingles and, thus, that applicant's mark is prohibited from registration under section 2(d).

## III

The dispute in this appeal centers on the recurring question of the evidentiary weight which should be afforded a consent to registration of a mark given by the owner of a registration for a mark which has been cited as a bar to registration under section 2(d). The seminal case discussing the effect of a consent, on which both sides rely to support their respective positions, is *In re E.I. DuPont DeNemours & Co.*, 476 F.2d 1357, 177 USPQ 563 (CCPA 1973).

The *DuPont* case held that all evidence of record relating to the issue of likelihood of confusion must be considered in reaching a conclusion on that issue, and it provided guidance by listing some thirteen factors which may enter into that determination. *Id.* at 1361, 177 USPQ at 567. A consent to registration is one of those factors. In holding that there was no likelihood of confusion in the respective uses of the same mark for specifically different products in that case, the court did afford great weight to a consent by the prior registrant which had been given as part of an agreement restricting the applicant's and registrant's respective uses of the mark. In so holding, the court said that

> experienced businessmen fully and continuously alert to each others' products, labels, trade channels and advertising ... will be quick to act against confusion.... Decisions of men who stand to lose if wrong are normally more reliable than those of examiners and judges.

476 F.2d at 1363, 177 USPQ at 569.

■ Mastic urges that registration is mandated by that precedent because the consent submitted here must be deemed to reflect the considered judgment of experienced businessmen that confusion is not likely in their respective uses of the mark. Contrary to Mastic's view, the *DuPont* case does not make it a "given" that experienced businessmen, in all cases, make an agreement countenancing each other's concurrent use of the same or similar marks only in recognition of no likelihood of confusion of the public. One must look at all of the surrounding circumstances, as in *DuPont*, to determine if the consent reflects the reality of no likelihood of confusion in the marketplace, or if the parties struck a bargain that may be beneficial to

their own interests, regardless of confusion of the public. For example, the parties may prefer the simplicity of a consent to the encumbrances of a valid trademark license. However, if the goods of the parties are likely to be attributed to the same source because of the use of the same or a similar mark, a license (not merely a consent) is necessary to cure the conflict. *See* 1 J. McCarthy, *Trademarks and Unfair Competition* § 18:25, at 866 (2d ed. 1984).

■ As *DuPont* holds, a consent is simply evidence which enters into the likelihood of confusion determination and may or may not tip the scales in favor of registrability, depending upon the entirety of the evidence. 476 F.2d at 1362–63, 177 USPQ at 567–69; *see* 1 J. Gilson, *Trademark Protection and Practice* § 3.04[3], at 3–64 (1987). If the evidence of record establishes facts supporting an applicant's argument that the two uses can exist without confusion of the public, even a "naked" consent to registration is significant additional evidence in support of the applicant's position. If, in addition, the consent is "clothed" with the parties' agreement to undertake specific arrangements to avoid confusion of the public, as in *DuPont,* the parties' assessment of no likelihood of confusion is entitled to greater weight, not because of the consent itself, but because such arrangements are additional factors which enter into the likelihood of confusion determination.

Mastic argues that the consent here is more than a "naked" consent, having been carefully constructed "delimitating [sic] [the parties'] respective rights, trade channels, etc., which implicitly states that as long as the parties maintain the status quo there will be no likelihood of confusion." Several flaws are apparent in that argument. First, as previously noted, Mastic's subject application for registration in the United States is based solely upon treaty rights, not upon use in United States commerce. Further, we note that Flintkote specifically consents only to Mastic's registration, not *use,* of the mark SHURLOK for vinyl siding. If Mastic is making the argument that so long as it makes *no* use in the United States, no confusion will occur, such argument has no validity. The section 2(d) determination must be made on the basis of presumed exposure of both marks to the public in the marketplace.

Second, Mastic's argument that the consent contains an "implicit" agreement restricting the parties' use is without foundation. The consent does not evidence a bilateral "agreement." It is simply a statement signed on behalf of Flintkote. Whatever agreement—if any—may exist between the parties with respect to trade channels, for example, has not been disclosed. Thus, the consent here is a "naked" consent. There are no undertakings of record between the parties which enter into the likelihood of confusion determination, and the board did not err in giving that characterization to the consent.

■ Mastic also urges that the consent in this case is persuasive of no likelihood of confusion because it specifically states that the parties took into account the relevant *DuPont* factors. Nothing said in the *DuPont* decision suggests that by mechanically naming the factors relevant to a likelihood of confusion determination in the consent, somehow the consent takes on greater dignity. On the contrary, the *DuPont* decision states that such factors "when of record" must be considered. 476 F.2d at 1361, 177 USPQ at 567. It does not negate likelihood of confusion that the parties have "taken into account" such factors. Consideration of such factors by the parties is not the key. The factors themselves, e.g., the similarity or dissimilarity of the marks and trade channels, must be weighed in the likelihood of confusion determination, not merely the parties' consideration of them.

The consent is conspicuously silent on what are the underlying facts which led the parties to their conclusion of no likelihood of confusion. Nevertheless, Mastic argues as if simply parroting a *DuPont* factor in its favor creates evidence which must be taken into account. For example, the consent states that the parties considered the "dissimilarity of the established, likely to continue trade channels." That conclusory

statement does not prove that the trade channels are, in fact, dissimilar and likely to continue. Evidence must be submitted which shows what are the established trade channels, together with some statement of the users' intentions. In the absence of evidence with respect to the specific channels of trade of Mastic and Flintkote, it is reasonable to conclude that they are the same as those generally used in the trade. Here, the only *evidence* with respect to trade channels is that submitted by the examiner showing that the trade channels for the types of products are the same, and that evidence stands uncontradicted. Contrary to Mastic's view, the consent itself is not evidence that the channels are different. The statement in the consent that the parties considered the "dissimilarity" in their trade channels is as vacuous as the statement that they considered the "dissimilarity" of their respective marks which are, in fact, identical, even to the extent of having the same phonetic spelling.

While we reject the above arguments, the question remains, whether, on the entirety of the record, including the consent, the board erroneously concluded that SHURLOK roofing shingles and SHURLOK vinyl siding are likely to be attributed to the same source.

██ In sum, the factors of record supporting the conclusion of likelihood of confusion in this instance are: (1) the identity of the marks, (2) the close relationship of the respective products, and (3) the identity of distributors and buyers for the goods, i.e., the identity of channels of trade. Mastic's admissions that there are no third-party uses of the mark and that Flintkote's mark is well-known also support that conclusion. On the other side of the scale, the factors are: (1) the respective goods are not competitive, (2) the issue is limited to those specific goods, and (3) Flintkote consented to Mastic's registration.

The board took all of the evidence into consideration in concluding that registration of SHURLOK for vinyl siding was precluded under section 2(d) because of a likelihood of confusion of source with SHURLOK used for roofing shingles. We are unpersuaded of either factual or legal error in the board's analysis of that issue. On the sparse facts of record, the consent appears simply to be an arrangement between the parties with no regard to whether it reflects the realities of no likelihood of confusion if and when both marks are concurrently used in United States commerce.[2]

### Conclusion

For the foregoing reasons, the board's refusal to register SHURLOK for vinyl siding under section 2(d) is affirmed.

AFFIRMED.

---

2. An example of a "consent" which did reflect market reality is discussed in the recent decision of this court, *Bongrain Int'l (Am.) Corp. v. Delice de France, Inc.,* 811 F.2d 1479, 1 USPQ2d 1775, (Fed.Cir.1987). As the analysis therein makes clear, the factual bases for the parties' recognition of each other's rights, as well as their agreement to restrict their uses to the specific products which each had developed, were fully developed in the record. *Id.* at 1482, 1 USPQ2d 1776; *accord In re N.A.D. Inc.,* 754 F.2d 996, 224 USPQ 969 (Fed.Cir.1985).