SDB
Paper No. 10

F137

FOR PUBLICATION IN FULL

U. S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE

---

Trademark Trial and Appeal Board

---

In re Emulex Corporation

---

Serial No. 526,915

---

Spensley Horn Jubas & Lubitz for applicant

Michael A. Szoke, Trademark Examining Attorney, Law Office 7
(Lynne Beresford, Managing Attorney).

---

Before Sams, Simms and Krugman, Members.

Opinion by Krugman, Member:


An application has been filed by Emulex Corporation to register JAVELIN as a trademark for computer peripheral storage unit.[1]

Registration has been refused under Section 2(d) of the Trademark Act on the ground that applicant's mark so resembles the previously registered mark JAVELIN for prerecorded computer programs in machine readable form[2] as to be likely, when

---

[1] Application Serial No. 526,915, filed March 14, 1985.

[2] Registration No. 1,338,947 issued June 4, 1985.

applied to applicant's goods, to cause confusion, mistake or to deceive. Specifically, the Examining Attorney asserts that the respective marks are identical and are arbitrary designations as applied to the respective goods; that applicant's goods may be used for storing computer programs of the type produced by the registrant; that the respective goods are sold to the same purchasers through the same channels of trade and that the consent of the registrant made of record herein, while a factor to be considered, is insufficient to warrant allowance of applicant's mark.

In support of his position, the Examining Attorney has submitted an excerpt taken from Webster's New World Dictionary of Computer Terms (1983) wherein the term "storage device" is defined as "any of various devices capable of retaining data for relatively long periods of time, such as a punch card, disk, or tape."

Applicant has appealed, contending that the respective goods are different in purpose and function, are non-competitive, are not likely to be produced by the same manufacturer, and are expensive, complex pieces of technical apparatus purchased by sophisticated consumers. Applicant argues that its product is a computer hardware product, functioning as a component of the entire electrical system of the computer. This product is typically used in conjunction with a large computer system which requires additional storage capability and said product is a complex piece of technical

2

apparatus typically purchased by large businesses in consultation with technicians who assemble data-processing computer systems for businesses. Applicant points to a price list, made of record during the ex parte prosecution of the application, showing that applicant's product is expensive, ranging in price from approximately $3,000 to $14,000. Applicant contrasts its goods to those covered in the cited registration which are, applicant contends, commonly referred to as "application software" and applicant argues that the goods in the cited registration are not in the nature of operation software programs which would function to control the computer internally. Applicant concludes that software of the type covered in the cited registration would not generally be produced by computer hardware manufacturers.

Applicant, in maintaining that no likelihood of confusion will occur from the contemporaneous use of the identical mark on the respective goods, places great emphasis on a letter of consent from the owner of the cited registration. In pertinent part, this consent states that some time ago, registrant agreed with applicant that applicant would prominently display on the face of its goods with which it uses the JAVELIN trademark and in all advertising and promotional materials for such goods, a distinctive corporate or trade name other than JAVELIN. The consent further states that the respective goods sold by the parties are sold in specialty shops, are expensive, and are

3

sold to computer users. These goods, the letter of consent states, are bought with care. The letter of consent concludes by stating that, while software and storage devices are both related to the computer field, the sophistication of the purchasers of the goods, the cost of the goods, together with the prominent use by applicant of a corporate or trade name not including the word JAVELIN results in no likelihood of confusion from the contemporaneous use of the identical mark in connection with the respective goods of the parties.

With respect to the marks, there is no dispute that they both comprise identical designations. While applicant has, during the prosecution of the application, made the argument that JAVELIN was a weak mark, having been registered to a number of third parties for a variety of goods, there is no competent evidence in support of this assertion.[3] It is clear that the mark JAVELIN as applied to the respective goods, is an arbitrary term having no descriptive or suggestive significance. As such, it is considered a strong mark and the only issue to be determined is whether the goods in connection with which the JAVELIN marks are used, are sufficiently related

---

[3] Applicant has submitted a copy of a trademark search report which, it claims, is evidence of the many JAVELIN registrations. However, as the Examining Attorney has correctly pointed out, if applicant wished to make any third-party registrations of record, copies of said registrations should have been submitted. The copy of the search report is insufficient to make any of these registrations of record. Moreover, we agree with the Examining Attorney that even if said registrations had been properly made of record, they would not be probative to show that the term JAVELIN is somehow "weak" in the computer field since none of the registrations referred to by applicant relate to computers or computer products.

Serial No. 526,915

as to result in a likelihood of confusion as to source or sponsorship for purposes of Section 2(d) of the Trademark Act.

Turning to the goods, applicant's goods are defined in the application as a computer peripheral storage unit while the goods identified in the cited registration are prerecorded computer programs in machine readable form. While applicant has attempted to characterize registrant's goods as limited to a specific type of "application" software, there is no such restriction in the identification of goods in the cited registration. It is settled that in a proceeding such as this, the determination of likelihood of confusion must be made based on a comparison of the marks and the goods recited in the application vis-a-vis the goods identified in the registration and not by what evidence or argument shows those goods to be. See: Canadian Imperial Bank of Commerce v. Wells Fargo Bank, 881 F.2d 1490, 1 USPQ2d 1813 (Fed. Cir. 1986) and cases therein. The Examining Attorney has demonstrated by way of a dictionary definition that a storage unit of the type described in applicant's application may be used for storing computer programs. While it is apparent that the computer hardware product sold by applicant is quite different from the software covered by the cited registration, we believe the respective products are closely related goods that would be sold through the same channels of trade to the same customers. Consumers in the computer industry need both hardware and software to make

5

computer systems work and to derive the benefits they offer. It would be inevitable that these customers would come into contact with both software and hardware goods offered by the computer industry and with the marks placed thereon by the producers in this market. See: Compagnie Internationale Pour L'Informatique-Cii Honeywell, 223 USPQ 363 (TTAB 1984); In re Graphics Technology Corporation, 222 USPQ 179 (TTAB 1984).

Applicant, while not disputing that the goods would be sold through the same channels of trade to the same classes of customers, nevertheless contends that because the goods are expensive and the customers are sophisticated, confusion as to source is unlikely. While we agree that the products involved in this case are not "impulse" type items and that their purchase would be a relatively careful one, nevertheless, we agree with the Examining Attorney that purchasers, while they may be sophisticated in the computer field, would not be immune from confusion as to source where the respective goods are marketed under the identical arbitrary trademark.

With respect to the letter of consent signed by the owner of the cited registration, while this consent is clearly a relevant factor to be taken into account with all of the other relevant circumstances bearing on the likelihood of confusion question, we do not believe the letter of consent is sufficient to warrant a conclusion that confusion as to source or

6

sponsorship is unlikely from the use of the identical mark in connection with the respective goods. Looking at the letter of consent, we note that said letter specifically indicates that the respective goods are sold to computer users and are sold in specialty shops. Thus, the registrant concedes that the channels of trade and classes of purchasers are identical. The registrant maintains, however, that there would be no likelihood of confusion because of the expense of the goods, the care with which the goods are purchased and the agreement that applicant would prominently display on its goods and on all advertising and promotional materials for such goods, a distinctive corporate or trade name not including the word JAVELIN. We have expressed earlier our opinion with respect to the "sophistication of purchaser" argument. We further note that while applicant may have agreed to utilize a corporate or trade name in connection with its use of the JAVELIN mark, the mark sought to be registered herein comprises solely the term JAVELIN and the question of likelihood of confusion must be determined based on the mark sought to be registered. Moreover, it is our view that the addition of a trade name or a housemark to an arbitrary trademark will not ordinarily reduce a likelihood of confusion between otherwise similar trademarks. In fact, it has been held that the inclusion of a trade name along with the mark may actually aggravate likelihood of confusion rather than reduce it. See: In re Dennison

Manufacturing Co., 220 USPQ 1015 (TTAB 1983) and cases cited therein.

While applicant has relied on the case of In re N.A.D. Inc., 754 F.2d 996, 224 USPQ 969 (Fed. Cir. 1985) in support of its contention that the letter of consent mandates reversal of the refusal of registration, we believe that case is distinguishable from the facts herein. In that case, the Court specifically held that the marks were not identical and that an alert purchaser could readily distinguish them. The Court further noted that the goods were elaborate, complex pieces of technical apparatus which would be purchased only in consultation with an anesthesiologist or someone with equivalent technical knowledge. The Court concluded that in view of those facts and taking into consideration the consent by the registrant, there was no likelihood of confusion.

In the present case, the marks are identical and, while the goods are somewhat sophisticated, they do not fall into the category of such complex pieces of technical apparatus that they would be purchased only by a specialist having the degree of technical knowledge of the type indicated in the case of In re N.A.D., supra.

In our view, the letter of consent, while evidence which enters into the likelihood of confusion determination, does not tip the scales in favor of registrability, in view of the entirety of the evidence. See: In re Mastic Inc., ___F.2d___, 4 USPQ2d 1292 (Fed. Cir. 1987).

Serial No. 526,915

Finally, with respect to applicant's argument that no instances of actual confusion have arisen, the Examining Attorney is correct in his assertion that there has been no indication as to the extent of applicant's use of its mark or of registrant's use of its mark and there has been no indication as to the geographical areas where the respective marks are used. Accordingly, there is nothing of record to indicate that there has been any opportunity for such confusion to have arisen and, therefore, the lack of actual confusion is not a weighty factor in this case.

For the foregoing reasons, we conclude that, taking all the relevant evidence into consideration and weighing all the appropriate factors, the goods are sufficiently related such that the use of the identical trademark in connection with such goods would be likely to result in confusion as to source or sponsorship and we conclude that the refusal of registration is well taken.

Decision:   The refusal of registration is affirmed.

J. D. Sams

R. L. Simms

G. D. Krugman
Members, Trademark
Trial and Appeal Board

NOV 5  1987

9