Paper No. 14
TEH

THIS DISPOSITION IS CITABLE AS
PRECEDENT OF THE TTAB      NOV. 8,99

U.S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE
————————

Trademark Trial and Appeal Board
————————

In re Dakin's Miniatures, Inc.
————————

Serial No. 74/706,577
Serial No. 74/706,610
————————

Stanley R. Jones for Dakin's Miniatures, Inc.

Florentina Blandu, Trademark Examining Attorney, Law Office 110
(Chris Pedersen, Managing Attorney).
————————

Before Simms, Hairston and Holtzman, Administrative Trademark
Judges.

Opinion by Holtzman, Administrative Trademark Judge:

Dakin's Miniatures, Inc. has filed applications to register
the marks DAKIN'S QUALITY CRAFTED MINIATURES (and design),[1] and
DAKIN'S CIRCLE B (and design),[2] for goods which were subsequently
identified as "young and teen-age figurine collectibles, namely,

---

[1] Serial No. 74/706,577 filed July 27, 1995 claiming use in commerce
since February 15, 1995.

[2] Serial No. 74/706,610 filed July 27, 1995 claiming use in commerce
since February 15, 1995.

wooden miniature horse stalls, barns and farm-yard related accessories and supplies."  The marks are reproduced below.

Serial No. 74/706,557          Serial No. 74/706,610

                    

Registration has been refused in both applications under Section 2(d) of the Trademark Act on the ground that applicant's marks so resemble the marks shown below (all owned by the same registrant) for a variety of toy products, as to be likely to cause confusion, mistake or deception:[3]

Registration No. 1,770,192 for "house mark for a full line of toys and Christmas ornaments":[4]

**DAKIN**

---

[3] We additionally note that previously-cited Registration No. 1,567,317 was cancelled by the Office on May 28, 1996.  In her appeal brief, the Examining Attorney withdrew the refusals based on this registration.  We also note that Registration No. 1,103,516 expired on July 12, 1999.  Therefore, the refusals to register are considered moot as to this registration as well.

[4] Issued May 11, 1993.

Registration No. 1,533,375 for "a line of toys":[5]



Registration No.1,531,015 for "house mark for a line of toys":[6]



Registration No. 1,296,550 for "plush stuffed toys":[7]



---

[5] Issued April 4, 1989; combined affidavits under Sections 8 and 15 filed.

[6] Issued March 21, 1989; combined affidavits under Sections 8 and 15 filed.

[7] Issued September 18, 1984; combined affidavits under Sections 8 and 15 filed.

Registration No. 1,249,114 for "infant toys – namely, stuffed toy animals, balls, stars, rings and squares":[8]



Applicant has appealed, and because the issues in both cases are the same, the appeals have been consolidated and the cases have been presented on the same briefs.  An oral hearing was not requested.

---

[8] Issued August 23, 1983; combined affidavits under Sections 8 and 15 filed.  The words "BABY" and "THINGS," and the representation of the baby have been disclaimed.

We affirm the refusals to register for the reasons set forth below.[9]

In any likelihood of confusion analysis, we look to the factors set forth in In re E. I. du Pont de Nemours & Co., 476 F.2d 1357, 177 USPQ 563 (CCPA 1973), giving particular attention

---

[9] At this point, we find it necessary to address several examination issues which remained unresolved at the time of appeal. First, we note that applicant, in its appeal brief, does not refer to its goods using its last amended identification, i.e., "young and teen-age figurine collectibles, namely wooden miniature horse stalls, barns and farm-yard related accessories and supplies," but rather uses a form of an earlier amended identification, "miniature figurine collectibles, namely miniature horse and farm related shelters, accessories and supplies." This earlier identification, however, was found to be indefinite by the Examining Attorney and was subsequently amended by applicant to the present identification. Accordingly, we have considered applicant's goods, in both applications, to be "young and teen-age figurine collectibles, namely wooden miniature horse stalls, barns and farm-yard related accessories and supplies."

Further, with respect to the '577 application, the Examining Attorney indicates in her brief that applicant "submitted a disclaimer of 'QUALITY CRAFTED MINIATURES.'" This statement is misleading and does not reflect the state of the application at the time of appeal. In fact, applicant did submit a disclaimer of this entire three-word phrase in response to the Examining Attorney's initial requirement for such a disclaimer. However, applicant later withdrew this disclaimer and substituted therefor a disclaimer of "QUALITY CRAFTED." While the Examining Attorney made final the requirement for a disclaimer of the entire phrase, "QUALITY CRAFTED MINIATURES," this requirement was not addressed or even raised by the Examining Attorney in her brief on appeal. Thus, the Board considers this requirement to have been waived by the Examining Attorney.

Finally, we also note that during the prosecution of these applications, applicant, in an apparent attempt to overcome the Section 2(d) refusal, submitted a disclaimer of "DAKIN'S" in both applications. In each final refusal, the Examining Attorney states that she "cannot enter the disclaimer" requested by applicant. In fact, the Examining Attorney could have entered the disclaimer. See TMEP § 1213.01(c). The Commissioner has ruled that an applicant may disclaim part of a mark, regardless of whether or not a disclaimer has been required or would be deemed necessary. See In re MCI Communications Corp., 21 USPQ2d 1534 (Comm'r 1991). Since the entry of such a disclaimer is permitted by the Office, and because the Examining Attorney also did not address this issue in her appeal brief, the disclaimer of "DAKIN'S" has been entered into the record.

to the factors most relevant to the case at hand, including the similarity of the marks and the relatedness of the goods. See In re Azteca Restaurant Enterprises Inc., 50 USPQ2d 1209 (TTAB 1999) and In re L.C. Licensing Inc., 49 USPQ2d 1379 (TTAB 1998).

We turn first to a consideration of the goods. Applicant emphasizes the asserted differences in textures of the respective goods and focuses on what it calls the "plush" versus "wooden" nature of the products. Applicant differentiates registrant's "soft, stuffed crib toys and crib mobiles" from its own "young teen collectibles." Applicant claims that its products are: "distinctly different in appearance and nature"; directed to "a more mature and separate customer base..."; and "more properly...considered as collectibles rather than toys."

Notwithstanding applicant's arguments, we find that applicant's figurine collectibles, on the one hand, and registrant's Christmas ornaments and full line of toys, including plush stuffed toys, on the other, are related products which, if sold under the same or similar marks, would result in likelihood of confusion. First, these products are sold in the same channels of trade. According to Mr. Dakin's declaration, (see infra) registrant's plush toys and applicant's figurines are even sold in the same retail store.

Moreover, although applicant attempts to distinguish the targeted age groups for the respective products, as well as the

6

specific nature of the products, the question of likelihood of confusion must be determined on the basis of the goods as set forth in the application and registration, without limitations or restrictions that are not reflected therein. See CBS Inc. v. Morrow, 708 F.2d 1579, 218 USPQ 198 (Fed. Cir. 1983).

Thus, the intended customers for applicant's products and many of registrant's products must be deemed to be the same. While applicant has restricted its goods to a "young and teen-age" audience, the toys and Christmas ornaments identified in three of the cited registrations are not limited to any particular age group. Therefore, those products must be presumed to reach all age groups and classes of customers, including those identified by applicant. Moreover, it appears that applicant's figurine sets and accessories are actually designed for use by a younger age group than applicant claims. The product catalogs submitted as specimens in the '577 application depict young children, not teenagers (young or otherwise), playing with the figurine sets.

Furthermore, applicant's figurines must be considered to be encompassed by registrant's broadly described "full line of toys," notwithstanding applicant's restriction of its own goods to wooden figurines and its claim that the figurines are "collectibles rather than toys." In addition, applicant's product catalogs make it clear that the figurines are marketed as toys, that is, intended to be played with, and not just as collectors' items. Even the Christmas ornaments identified in one of the cited

registrations must be construed to include such items as wooden toy figurines which would be suitable for hanging as Christmas ornaments.

Finally, we note that applicant has not argued or established that its figurines are expensive products which would only be purchased after careful thought and consideration.

We turn next to a consideration of the marks. The Examining Attorney argues, in this regard, that the marks create "highly similar" commercial impressions. The Examining Attorney maintains that the word "DAKIN" is the dominant portion of applicant's and registrant's marks, that the accompanying design elements are not sufficient to distinguish the respective marks, and that DAKIN is an arbitrary term when used in connection with registrant's line of toys.

It is applicant's position that "DAKIN," as applicant's family name, is neither a dominant nor controlling feature, but rather plays only an "incidental part" in the overall commercial impression created by the mark.[10] Applicant maintains that registrant "does not have any exclusivity to the word Dakin alone" (emphasis omitted) and that all of the cited registrations "are

---

[10] Applicant indicates in its brief that it is focusing its argument on its "primary" mark, the mark in the '577 application. Applicant has not separately addressed or attempted to distinguish the mark in the '610 application from registrant's marks.

8

combination marks which merely include the word Dakin together with some other identifying symbol(s)."

In this case, we find that applicant's marks and registrant's marks create very similar commercial impressions.  While marks must be compared in their entireties, one feature of a mark may have more significance than another, and in such a case there is nothing improper in giving greater weight to the dominant feature. See In re National Data Corp., 753 F.2d 1056, 224 USPQ 749 (Fed. Cir. 1985).  In the case of marks which consist of words and a design, the words are normally accorded greater weight because they would be used by purchasers to request the goods.  See In re Appetito Provisions Co., 3 USPQ2d 1553, 1554 (TTAB 1987). Moreover, descriptive matter is generally viewed as a less dominant or significant feature of a mark.  See In re National Data Corp., supra.

In this case, a prominent feature of all of the marks is the word, "DAKIN."  In fact, one of the cited registrations consists solely of the typed word "DAKIN."  The marks in two other registrations (Registration Nos. 1,533,375 and 1,531,015) are dominated by the word "DAKIN," the triangle design in the latter registration functioning merely as an insignificant carrier for the "DAKIN" portion of the mark.  In addition, we find that the wording "QUALITY CRAFTED MINIATURES" (in the '577 application) is less significant than "DAKIN'S" in the impression it creates due to the descriptive or informational nature of the phrase, the

9

smaller size of its lettering, and the placement of the wording along the periphery of the design. Nor is the similarity overcome by the inclusion of "CIRCLE B" in the mark depicted in the '610 application in view of applicant's equally prominent display of "DAKIN'S" in that mark.

Moreover, the presence of various design elements in applicant's and registrant's marks does not serve to distinguish those marks. It is the word portion of the marks which is most likely to be impressed upon a customer's memory as it is used by prospective purchasers when asking for applicant's and registrant's goods. See In re Appetito Provisions Co., supra. In fact, the wide assortment of designs in these marks may actually enhance a perception that the goods offered thereunder emanate from the same source. A purchaser familiar with the different forms and variations of the designs appearing in registrant's "DAKIN" marks, particularly in view of the closely related nature of the respective products, is more likely to mistakenly assume that the figurines sold under applicant's "DAKIN'S" marks, each with its own accompanying design, are just part of, or an expansion of registrant's line of "DAKIN" toys.

We note applicant's argument that "DAKIN" is a "family name," and therefore apparently weak and not entitled to a broad scope of protection. While "Dakin" may be applicant's family surname, there is no evidence to indicate that the public would perceive the term as a surname. Moreover, applicant's claim that

10

registrant "does not have any exclusivity to the word Dakin alone" is not understood inasmuch as the word "DAKIN," without any additional wording, design or stylization, is registered on the Principal Register without resort to a claim of acquired distinctiveness under Section 2(f). There is no evidence suggesting that the registered "DAKIN" marks are anything but strong and entitled to anything less than a broad scope of protection.

In addition to the above factors, we note that applicant has submitted a declaration by its President, Mr. Roy Dakin, claiming that this declaration reflects a "consent agreement" between himself and the registrant.[11] The question remaining, then,

---

[11] Mr. Dakin asserts in his (unsigned) declaration that he has been using the family name "Dakin" in his business for over ten years; that applicant's products are sold in over 700 stores nationwide; that in applicant's store in Searsport, Maine, applicant "sell[s] Dakin Plush products...without any confusion in the market place"; and that "at a precise date not now known, but probably in 1988 – a lady attorney representing [registrant] contacted me" and "inquired about my use of the surname Dakin as an identifying mark on my wooden, miniature farm-related collector-type products." Mr. Dakin proceeds to recount his version of the alleged conversation which took place between himself and the unnamed attorney, concluding with the statement that the attorney "acknowledged that I had a right to use my family name and that because of the soft versus hard nature of our respective products no customer confusion was likely." Mr. Dakin further alleges that "[r]epresentatives of the two companies have many times met together at National and International toy shows, and through those many meetings [registrant] has become fully aware of [Mr. Dakin's] decade long business..."; that no actual customer confusion "to [Mr. Dakin's] knowledge" has occurred; and that he "personally know[s] the [registrant's] officers and they have no problem with my [m]arks."

11

concerns the effect, if any, of this declaration on our determination of likelihood of confusion.  Applicant maintains that the declaration reflects a consent agreement, and as such should be given great weight.

Obviously, in appropriate circumstances, consent agreements are entitled to substantial weight in determining likelihood of confusion.  See Bongrain International (American) Corp. v. Delice De France, Inc., 811 F.2d 1479, 1 USPQ2d 1775 (Fed. Cir. 1987).  However, this does not mean that the mere existence of a consent, regardless of the type of consent or the circumstances surrounding the consent, will automatically result in a finding of no likelihood of confusion.  See Gray v. Daffy Dan's Bargaintown, 823 F.2d 522, 3 USPQ2d 1306 (Fed. Cir. 1987) and In re Donnay International, Societe Anonyme, 31 USPQ2d 1953 (TTAB 1994).

Here, we do not have a consent agreement.  What we have is applicant's representation that registrant has consented to its use of the "DAKIN'S" marks.  Even if we were to find that there was an oral agreement between applicant and registrant, we note that most (if not all) of the cases concerning consents involved *written* consents of the owner of the prior registrations to the

12

registration of the applicant's mark.[12]  Those decisions have also generally required the type of agreement which, because of its terms, could convince a finder of fact that, despite the similarity of the marks and relatedness of the goods, confusion is not likely to occur.  All we have before us is Mr. Dakin's unsupported assertions of fact and his one-sided, unsubstantiated version of asserted exchanges which allegedly took place at some unidentified time and place with some unnamed attorney and unidentified officers of registrant's company.  We simply cannot conclude from Mr. Dakin's declaration that registrant has no objection to the registration of applicant's marks.

---

[12] See, for example, In re Four Seasons Hotels Limited, 987 F.2d 1565, 26 USPQ2d 1071 (Fed. Cir. 1993); Amalgamated Bank v. Amalgamated Trust & Sav. Bank, 842 F.2d 1270, 6 USPQ2d 1305 (Fed. Cir. 1988); Bongrain International (American) Corp., *supra*; In re E.I. du Pont de Nemours & Co., *supra*; and In re N.A.D., Inc., 754 F.2d 996, 224 USPQ 969 (Fed. Cir. 1985).  See also, for example, In re Sunmarks, 32 USPQ2d 1470 (TTAB 1994) and In re General Motors Corp., 23 USPQ2d 1465 (TTAB 1992).   In the *General Motors* case, the Board was convinced by a "confluence of facts" that confusion, in that case, was not likely to occur.  In the present case, we are confronted only with vague and uncorroborated assertions of fact.

Applicant claims that "[c]onsent [having] been established, no written agreement was believe[d] necessary, and since then corporate buy outs, mergers[,] name-changes and the like concerning registrant and the reference[d] marks have entered the picture."  However, applicant has submitted no documentation to support this claim and we note that Office records show that ownership of even the two oldest (active) registrations has only been transferred once over the course of their 15-year existence.  Moreover, applicant's president himself has stated that he personally "knows" registrant's officers.  It is not understood, if registrant has no objection to applicant's use and registration, why a simple and straight-forward consent could not have been obtained.

We find, based on the foregoing, that applicant's use of its marks DAKIN'S QUALITY CRAFTED MINIATURES (and design) and DAKIN'S CIRCLE B (and design) in connection with figurine collectibles is likely to cause confusion with registrant's "DAKIN" marks for toys and Christmas ornaments.

**Decision:** The refusal to register is affirmed.


R. L. Simms


P. T. Hairston


T. E. Holtzman
Administrative Trademark
Judges, Trademark Trial  and
Appeal Board