**BONGRAIN INTERNATIONAL (AMERICAN) CORPORATION, Appellant,**

v.

**DELICE DE FRANCE, INC., Appellee.**

Appeal No. 86–1303.

United States Court of Appeals, Federal Circuit.

Feb. 12, 1987.

Robert V. Vickers, Body, Vickers & Daniels, Cleveland, Ohio, argued for appellant. With him on the brief was Thomas E. Young, Cleveland, Ohio.

Richard S. Huszagh, Rudnick & Wolfe, Chicago, Ill., argued for appellee. Diane Fields, Geocaris, Rudnick & Wolfe, Chicago, Ill., was on the brief for appellee.

Before RICH, BISSELL and ARCHER, Circuit Judges.

RICH, Circuit Judge.

Bongrain International (American) Corporation (Bongrain) appeals from the March 19, 1986, decision of the United States Patent and Trademark Office (PTO) Trademark Trial and Appeal Board (board) (unpublished) granting the petition of Delice de France, Inc. (Delice) to cancel two registrations owned by Bongrain. We reverse and remand.

### Background

As frequently happens, this cancellation proceeding evolved from the citation of the registrations sought to be cancelled as references against an application to register a mark filed by the petitioner-to-cancel, who undertook cancellation of the reference registrations as one way to overcome the PTO's ground of rejection. But, as will appear, that was not the only way the rejection could be overcome. There was a less traumatic course of dispute resolution which the parties hereto were, commendably, attempting to follow until the sua sponte thwarting and unnecessary intervention of the board. As will be shown, Bongrain and Delice, up to the time of the board decision, were not behaving in the usual adversary fashion but, as sensible business entities, were attempting to

achieve a mutually agreeable solution to Delice's problem. Once the board interjected its more draconian solution, however, which neither party asked for, Delice's lawyers assumed the usual lawyer-like posture of going all out to sustain the victory by all possible means.

Because we see no necessity, under the facts of this case, to deprive Bongrain of its registrations of a mark it will no doubt continue to use, which registrations will not be damaging to Delice once it gets the registration it seeks, and because we deem it desirable to encourage the kind of cooperative dispute resolution which prevailed in this case prior to the board decision, rather than to discourage it as that decision unnecessarily does, we approve the solution the parties were originally jointly seeking.

Delice is the undisputed prior user of the following trademark:

On November 24, 1980, it filed in the PTO an application to register it, serial No. 287,466. This application is not in the record before us. The petition for cancellation filed by Delice, however, states that the mark has been used since "November 1975, and in commerce since at least as early as May 1978," "in connection with bread products, croissants, brioche, pastries, rolls, and Danish and other bakery products."

What gave rise to this petition to cancel is the fact that Delice's application to register was, as stated in the petition, rejected for the following reason:

3. Petitioner's Mark was refused registration on the Principal Register under Section 2(d) of the Lanham Act in a final Office Action dated April 6, 1984, on the basis of Registrations No. 1,246,504 and No. 1,247,212.

That fact is, of course, alleged to be damaging to Delice, which gives it a basis for petitioning to cancel. The named registrations are owned by Bongrain and further particulars are: Reg. No. 1,246,504, dated July 26, 1983, is for "Cheese" and claims first use March 1, 1979. Reg. No. 1,247,212, dated Aug. 2, 1983, is for "cheeses and milk products" and claims first use June 1979. Both are for the mark, set forth in ordinary capital block letters.

# LE PETIT DELICE DE FRANCE

The earlier registration states that the words forming the mark "can be translated to mean 'The small delight of France'." The later registration states the mark "is translated into English as 'The little delight of France'."

The two Bongrain applications for registration were filed on August 4, 1980, and October 30, 1980, and thus were copending with the Delice application filed November 24, 1980.[1] The Delice application was brought to the attention of Bongrain's attorney by the PTO, whereupon the attorneys for Bongrain and Delice communicated with one another, describing the activities of their clients and passed the information obtained to their clients. The clients came to the conclusion that their respective marks could be used on their respective goods without causing confusion in the marketplace and without injury to each other as shown by a written agreement they entered into in March 1983, several months before Bongrain's registrations issued.

The facts in this cancellation proceeding have been stipulated by the attorneys. The paragraph covering the making of the agreement reads, in pertinent part:

14. In the beginning of 1983 the parties contacted one another, examined the marketing efforts for Bongrain's branded product and Delice's branded product and examined the marketplace to determine if a problem existed. The parties learned that no confusion had been reported between the respective branded products and concluded that consumer confusion could be avoided in the future. Delice and Bongrain executed an agreement governing the parties['] use of their respective marks such that the market conditions resulting in the lack of consumer confusion would continue. A copy of this agreement is attached hereto as Exhibit C.

The agreement itself, which was signed by the presidents of the two corporate parties, consists of four single-spaced pages. In summary, it recites the marks the parties are using, the goods they have used them on, the pending applications to register, that there are no known instances of confusion between the marks, that the parties believe "that there is no likelihood of confusion between their respective marks," and that the parties "deem it to be in their respective best interests to agree to restrict the fields of use for their respective marks in order to avoid likelihood of confusion." Therefore, Delice agreed not to use its mark on cheese or milk products and Bongrain agreed not to use its mark on bakery products.

Although we can find no such provision in the copy of the agreement before us identified as "Exhibit C," paragraph 15 of the stipulation of facts, by which we are bound, says:

15. The continuing enforceability of the agreement identified as Exhibit C was made contingent on Delice's ability to obtain a Federal Registration based on its pending application serial number 287,266 protecting its use of its mark.

No light has been shed on where this "unenforceability" provision comes from or what the reason for it was. And lest that be taken as the end of the agreement—Delice not having obtained a registration on its application—we quote further from fact stipulation 15, albeit with some mystification, which goes on to say (our emphasis):

The Patent and Trademark Office Examining Attorney charged with Delice's application ... refused to pass Delice's application to registration. The agreement then *became unenforceable*. The parties have continued to fulfill the obligations *imposed upon them by the agreement* as it is in their interest to

---

1. The unexplained mystery in this case is why, with the three copending applications before him, the PTO examining attorney decided to issue registrations on the Bongrain applications when their dates of first use were subsequent to the dates claimed by Delice. It does not appear to have been an inadvertent act and is inconsistent with the later board opinion.

avoid confusion in the marketplace. The agreement will be made binding on the parties once again *when Delice obtains a registration.*

These words have significance when we come to analyze the intent of the parties in submitting this case to the board on a stipulation of facts. The two questions to be borne in mind are: (1) On what decision of the board was Delice expected to obtain a registration? (2) Did the agreement and the stipulation contemplate the possibility of depriving Bongrain of registrations it was seeking when they were entered into? We note particularly paragraph 3 of the agreement reading:

> 3. Delice agrees not to file any petition for opposition against Bongrain's Applications [serial Nos. 273,881 and 284,035 on which its registrations were later granted], nor to file any petition for cancellation of any registrations issued therefor, on the basis that Bongrain's Marks so resemble Delice's Mark as to be likely to cause confusion, or to cause mistake, or to deceive.

That is a provision the stipulation contemplates will "be made binding ... when Delice obtains a registration" as a result of the board decision which was being sought. Presumably, as a result of the board decision cancelling the two Bongrain registrations, thus removing the references on the basis of which Delice's application to register its mark was refused, Delice will now be able to obtain its registration. But this was not how the parties contemplated matters would turn out; from the outset, they *both* sought to obtain registrations. They entered into the agreement in March 1983, Bongrain got its registrations in July and August of the same year in spite of being the later user, and in April 1984 Delice, the prior user, was denied registration on the basis of those registrations even though the agreement was made of record in the Delice application.

The next procedural event was the filing on July 2, 1984, of Delice's petition for cancellation, in spite of which the parties continued to cooperate on the basis of their belief that there was no likelihood of confu-

sion from their respective practices, abiding by the agreement except for Delice's petition to cancel.

Bongrain next filed, on August 23, 1985, a motion for summary judgment requesting dismissal of the petition to cancel *on the sole ground "that no likelihood of confusion exists between its trademark ... and petitioner's mark"* (emphasis ours), accompanied by the aforesaid stipulation of facts and a supporting memorandum in which it principally relied on our predecessor court's opinion in *In re E.I. du Pont de Nemours & Co.*, 476 F.2d 1357, 177 USPQ 563 (CCPA 1973). That case involved an application to register "RALLY" for certain goods and a cited registration of the *identical* mark for different goods and an agreement between applicant and registrant to avoid likelihood of confusion. The court reversed the PTO's refusal to register and the opinion discusses some thirteen factors to be considered in determining likelihood of confusion under such circumstances. Bongrain compared all of them to its situation and submitted that the *DuPont* case strongly supported a finding *of no likelihood of confusion.* It thus laid before the board an extensive argument plus the stipulation of facts and the parties' agreement.

Delice, in reply to all of the foregoing, filed a 2–page memorandum. Over half was devoted to a recitation of undisputed facts. *No disagreement* was expressed with any of Bongrain's arguments. No objection was made to the granting of Bongrain's motion. No cross-motion was filed. What was actually said is significant:

> ... Delice brought the instant cancellation proceeding in order to deal with the objections in the trial examiner's decision [rejecting Delice's application]. Those objections would be overcome *either* if registrant's marks [sic, registrations] were cancelled or, in the alternative, *if Delice's cancellation petition were denied on the ground that there is, in fact, no likelihood of confusion* between Delice's and Bongrain's marks. In the latter case, this Board's determination of

no likelihood of confusion should be conclusive of the very same issue raised in the stayed application proceeding under the doctrine of *stare decisis.* [Citations omitted.]

Consequently, while not conceding the point that there is no likelihood of confusion between its and Bongrain's marks, Delice submits this brief to point out that resolution of the issues *raised by Bongrain's motion* for summary judgment will further Delice's efforts to obtain registration of its mark. [Emphasis ours except for *stare decisis.*]

This can scarcely be characterized as an opposition to Bongrain's motion for summary judgment in its favor—thus preserving its registrations—on the ground "that no likelihood of confusion exists." Bongrain filed a 2-paragraph reply reiterating that it asked for a holding of no likelihood of confusion.

### The TTAB Decision

Thus informed and briefed, the board, in a 16-page March 19, 1986, opinion, essentially synthesized its own case *for* likelihood of confusion—Delice having made no argument to that effect and Bongrain having argued entirely to the contrary in support of its motion—and decided what neither party had asked it to decide, viz., that "a likelihood of confusion exists because the marks are similar, the goods are closely related, and none of the other factors argued by respondent [Bongrain] negates likelihood of confusion." It then proceeded to justify this essentially *a priori* opinion with point-by-point argument and citation of some 15 cases, mostly TTAB opinions involving different fact situations. Notably, it never mentioned the *DuPont* decision of the CCPA on which Bongrain principally relied and based its whole argument, nor did it say a single word about how it disposed of Bongrain's motion for summary judgment, which was the sole procedural means by which the case had been brought before it. Its conclusion reads:

In view of the above, the Board finds that there remains no genuine issue of material fact for trial, and that petitioner [Delice] is entitled to summary judgment

as a matter of law on the question of likelihood of confusion. Accordingly, the petition to cancel respondent's marks is granted. The registration will be cancelled in due course.

### OPINION

■ Perhaps the board was motivated by the fact that Delice, as between the parties hereto, was the prior user and was being denied registration, to which it was clearly entitled, on the basis of a junior user's registrations. But that is insufficient to support the board's decision.

The gravamen of this case is that as prior user Delice is entitled to a registration of its mark which the PTO has denied it. As Delice was at some pains to point out to the board after the parties, over a long period, had labored to work out a mutually satisfactory settlement which would give both of them the advantages of registration, there was more than one route to a solution.

In filing its motion for summary judgment and in *stipulating* the facts *supporting* that motion, both parties, in effect, were asking for the solution which was mutually agreeable to them, which destroyed nobody's rights, and which, under the law, seemed to them to be entirely proper. That solution was to get a ruling from the board in agreement with both parties' views, based on their knowledge of their own businesses and their market investigations, that there was no actual confusion in the marketplace, and no reasonable likelihood thereof if they continued their existing marketing practices. Neither party desired the other to stop *using* its mark or to change the way it did business. Both parties were agreeable to the registration of both marks. They entered into an agreement designed to assure the future existence of the status quo. Delice did not ask for summary judgment in its favor or make any motion. In practical effect, it went along with Bongrain's motion and the arguments in support of it.

We have often said, in trademark cases involving agreements reflecting parties' views on the likelihood of confusion in the

marketplace, that they are in a much better position to know the real life situation than bureaucrats or judges and therefore such agreements may, depending on the circumstances, carry great weight, as was held in *DuPont*. Here, the board appears effectively to have ignored the views and conduct of the parties merely because it harbored a different view from the parties on likelihood of confusion. Its opinion brings to mind what this court said a short while ago in *In re N.A.D., Inc.*, 754 F.2d 996, 999, 224 USPQ 969, 971 (1985):

> The board spent much of its opinion analyzing and dissecting the *marks* in arriving at its opinion that *they* are "confusingly similar," and then finding it "axiomatic that confusion is likely when confusingly similar marks are used to identify closely related goods and services." We have never found anything axiomatic about the application of § 2(d) to fact situations, especially when consent agreements are involved.

■ Likelihood of confusion under § 2(d) is, as the board said, a question of law and as such it is freely reviewable by us. Our review of this case, particularly considering the views of the parties on what actually happens and is likely to happen in the marketplace as it affects their respective businesses, constrains us to disagree with the board. We approach that issue, of course, on the basis of the situation as a whole and in light, at least, of all 13 of the *"DuPont* factors" upon which Bongrain relied before the board and here. We hold, therefore, that a likelihood of confusion, or mistake, or deception, within the meaning of § 2(d) of the Trademark Act, 15 U.S.C. § 1052(d), does not exist. We do so in part because of the cumulative differences in the marks *and* in the goods. In doing so we also find that there are no substantial issues of material facts necessary to support that holding.

■ The primary purpose of the Trademark Act of 1946 is to give Federal procedural augmentation to the common law rights of trademark owners—which is to say legitimate users of trademarks.

One of the policies sought to be implemented by the Act was to encourage the presence on the register of trademarks of as many as possible of the marks in actual use so that they are available for search purposes. The agreement entered into by Delice and Bongrain, among other evidence, makes it perfectly clear that they both intend to go on using their respective marks no matter what the PTO does, and neither wishes to interfere with such use by the other. It is, therefore, contrary to the policy and purposes of the Trademark Act to remove Bongrain's marks from the register by cancelling its registrations if they may be preserved without clear violation of the statute. It is possible to preserve the registrations, as the parties originally agreed to do, by accepting their reasonable appraisal of marketplace conditions and agreeing with them that confusion does not and is not likely to exist. Section 2(d) should be construed *in pari materia* with the rest of the Act and the historical policies known to underlie it. Those policies were not served by the independent, misguided efforts of the board to take it upon itself to prove facts, quite unnecessarily and by reasoning entirely on its own, to establish a case of likelihood of confusion when not asked to do so. The *only* motion before the board, substantially unopposed, was supported by facts showing exactly the opposite.

Analyzing this case from both a factual and legal viewpoint, it is not necessary, in view of cumulative differences between the marks *and* the goods enumerated, to hold that confusion is likely. It seems more than probable that that is the reason why Bongrain's registrations were issued. As the prior user, Delice would be the one to object to the use and registration of Bongrain's mark. It has never objected to the use and, notwithstanding this cancellation proceeding, it has not seriously objected to its registration. Considering the agreement and stipulated facts, it is clear that the only reason for asking cancellation is because the PTO refused a registration to it. It is still party to an agreement which it insists will become enforceable again as

soon as it gets a registration. The cancellation can therefore be regarded as pro forma, or as a mere procedural device to correct the PTO's error in not registering the Delice trademark. That done, clearly it has no objection to Bongrain having registrations of its mark on milk products and cheese.

There is no evidence in this case, other than the marks themselves, to support a conclusion of likelihood of confusion and substantial evidence to the contrary. The statute refers to likelihood, not the mere possibility, of confusion.

We have given careful consideration to appellee's brief before us but find it wholly unpersuasive as we did the presentation of its counsel at oral argument. The brief represents a complete change of position from that taken before the board's decision. Likelihood of confusion cannot be established, as the board did, merely by citing other cases based on different fact situations. It is an ultimate conclusion which must be reached on all the circumstances of the case at bar.

The decision of the Trademark Trial and Appeal Board is *reversed* and the case is *remanded* with instructions to grant Bongrain's motion for summary judgment in its favor consistently with this opinion.

REVERSED AND REMANDED.