Mailing:
August 13, 2007

This Opinion is a
Precedent of the
TTAB

**UNITED STATES PATENT AND TRADEMARK OFFICE**

————

**Trademark Trial and Appeal Board**

————

In re Paper Doll Promotions, Inc.

————

Serial No. 76451078

————

Charles C. Garvey, Jr. and Seth M. Nehrbass of Garvey, Smith, Nehrbass & Doody, L.L.C. for Paper Doll Promotions, Inc.

Sonya B. Stephens, Trademark Examining Attorney, Law Office 109 (Dan Vavonese, Managing Attorney).

————

Before Rogers, Zervas and Cataldo, Administrative Trademark Judges.

Opinion by Rogers, Administrative Trademark Judge:

Paper Doll Promotions, Inc. (applicant) has applied, under the intent-to-use provisions of the Trademark Act, to register the mark PAPER DOLL PROMOTIONS in standard character form. The precise goods for which applicant seeks to register the mark is an issue in this appeal. However, there is no dispute that the goods are "costumes" of one or more types.

The examining attorney has refused registration of applicant's mark, in view of the prior registration of the mark PAPER DOLL, in standard character form, for "children's sportswear, namely, skirts, pants, blouses, vests, rompers, shirts, jackets, shorts, dresses, two piece sets consisting of slacks and jackets or skirts and jackets, and pants suits, and women's wearing apparel, namely, junior dresses, two-piece sets consisting of slacks and jackets or skirts and jackets, pants suits, blouses, skirts, shorts, tops, dresses and jackets" in International Class 25[1], and of the mark PAPERDOLL A WOMAN BY ANY DEFINITION and design (shown below) for "clothing, namely, t-shirts and underwear" in International Class 25.[2]



---

[1] Registration No. 2375912, issued August 8, 2000, Section 8 and 15 affidavits accepted and acknowledged, respectively.

[2] Registration No. 2832820, issued April 13, 2004. The registration includes a description stating that the design elements are a stylized woman's head and a butterfly.

The two cited registrations are owned by different entities.

The examining attorney eventually made the refusal of registration final, as to both cited registrations and as to a requirement that applicant amend the identification and classification of its goods. Applicant filed an appeal and a request for reconsideration. The request for reconsideration has been denied and both applicant and the examining attorney have filed briefs on appeal.

An analysis of likelihood of confusion under Section 2(d) of the Trademark Act, 15 U.S.C. § 1052(d), includes a comparison of the goods or services in the refused application and cited registration(s). In re Majestic Distilling Co., 315 F.3d 1311, 65 USPQ2d 1201, 1205 (Fed. Cir. 2003). It is necessary then to consider first the issues of applicant's identification and classification.

***The Identification of Goods and Classification***

The application, as filed, sought registration of applicant's mark for "costumes" and for "entertainment services, namely conducting parties (including costume parties and parties wherein talented performers are provided[]) at customer facilities such as convention centers, hotels, and onboard cruise ships for passengers of

all ages."  Applicant did not classify the goods or services.

The examining attorney's initial office action recognized the separate listing of goods and services.  The examining attorney also noted, however, that applicant had only paid an application fee for one class, and stated that a likelihood of confusion search would not be conducted and the application would not be examined on its merits until applicant either paid an additional fee or deleted one class.[3]  The examining attorney did not address the definiteness of either identification or the proper international classification of the goods or services.

While an applicant "should" designate the international classes in which its goods and services fall "whenever the information is known," the Office generally will assign class numbers when an applicant does not provide them.  See TMEP Sections 1401.03 and 1401.03(b).  The examining attorney did not assess initial

---

[3] The examining attorney asserted a written office action "must issue" when insufficient fees have been paid and there is no "authorization to charge the omitted fees."  However, TMEP Section 810.01, on which the examining attorney relied, actually provides:  "If the applicant has not provided a specific authorization to charge an account, the examining attorney should attempt to contact the applicant by telephone to secure a written authorization to charge fees to a credit card or deposit account by fax. If this is successful, the examining attorney should have the LIE [legal instruments examiner] charge the necessary fees to the credit card or deposit account and proceed with examination."

classification or any other issue presented by the application when issuing the first office action. See TMEP Section 1401.03(b) ("If an incorrect class number was designated by the Pre-Examination Section, the examining attorney must inform the applicant of the correct class number for the identified goods or services and require amendment of the classification.").

Applicant responded to the first office action by deleting its class of services, so that the application was thus restricted to one seeking registration of the mark for "costumes." Applicant did not address classification of these goods. The examining attorney, in the second office action, noted the deletion of the services, writing, "The applicant's request to proceed solely on its goods in International Class 25 has been accepted and entered into the record." However, later in the same office action, when the examining attorney first raised an issue about the identification, the examining attorney stated (1) that the wording "costumes" was "unacceptable as indefinite," and (2) "the applicant must correct the classification of the goods … to classify them in International Class 25" because the "Office incorrectly classified the goods in International Class 41 during the preliminary review of this application." Though the office action did not

5

explain why the wording "costumes" was considered indefinite, a format for an amended, more definite identification was included.[4]

In applicant's response to the second office action – which was the first office action refusing registration and addressing identification and classification issues – applicant did not discuss classification but did argue that it viewed "costumes" as a sufficiently definite identification. In the third office action, the examining attorney maintained the requirement for a more definite identification and proper classification. Nonetheless, applicant asserted again "that 'costumes' is definite enough," that applicant intends to use the mark for various types of costumes, and that the mere fact the Office's "Trademark ID Manual"[5] lists nine different acceptable identifications for various types of costumes does not mean "costumes" alone is not definite enough. In the final refusal of registration, the examining attorney argued that the absence of "costumes" per se from the Office's ID manual "means exactly that 'costumes' is not specific

---

[4] We note that Class 25 covers clothing and Class 41 covers entertainment services. See TMEP Section 1401.02(a).
[5] References herein to the Office's ID manual are references to the "Trademark Manual of Acceptable Identifications and Classifications for Goods and Services," available on the web at: http://www.uspto.gov/web/offices/tac/doc/gsmanual.

enough," and maintained the requirement for a more specific identification.[6] In addition, the examining attorney reiterated that applicant would have to correct the classification of its goods to Class 25.

In a request for reconsideration, applicant proposed amendment of the identification of goods to "Costumes, namely masquerade costumes, Halloween costumes, Mardi Gras costumes, and custom costumes, in International Class 25." The examining attorney, in what appears to be a form office action denying the request for reconsideration, inserted a footnote acknowledging the proposed amended identification but concluding, "the identification of goods remains unacceptable as indefinite (based on the applicant's use of the indefinite wording 'custom costumes'). TMEP section 1402.01."[7]

---

[6] In the final office action, the examining attorney included a reprint of 9 acceptable identifications for various types of costumes, all indicated to be in Class 25.

[7] There is nothing in the record to indicate that the examining attorney contacted applicant by telephone to discuss a possible examiner's amendment to remedy the one asserted problem in the proposed identification ("custom costumes"). There is also nothing in the record to indicate that applicant contacted the examining attorney by telephone after receiving the office action denying the request for reconsideration. However, we note that the Board's order resuming this appeal issued scarcely a week after the office action denying the request for reconsideration, and applicant may not have thought it an option.

As a result, it is the examining attorney's position, as stated in the Office's brief on appeal, that the operative identification is "'costumes' *classified by the applicant* in International Class 41." (Brief, unnumbered p. 1; emphasis added.) More specifically, the examining attorney contends, "On June 9, 2003, the applicant submitted a response to the first Office action *in which it amended the identification of goods to 'costumes in International Class 41.'*" (Brief, unnumbered p. 2; emphasis added.)

For the purpose of assessing applicant's compliance with the examining attorney's requirements in regard to the identification and classification, we consider the identification and class adopted by applicant in the request for reconsideration to be the operative identification and class. Moreover, we consider the question of classification to have been settled by applicant's request for reconsideration, notwithstanding the examining attorney's assertions quoted above.

First, it is not true that applicant ever classified costumes in Class 41. In fact, the examining attorney's second office action specifically acknowledged that the Office had mistakenly assigned Class 41 to the listing of goods during preliminary review of the application. In

8

addition, applicant's June 9, 2003 response did not address the question of classification.

Second, there can be no logical argument made that classification is an issue on appeal or that, as the examining attorney states, "the applicant has failed to provide … a proper classification" of its goods. (Brief, unnumbered p. 14.) According to Trademark Rule 2.32(a)(7), 37 C.F.R. §2.32(a)(7), the international classification should be provided in a "complete application," but adds "if known." The TMEP explains that if an applicant's designation of a class "is clearly wrong (*e.g., goods are classified in a service class*)" the Office will correct the classification; and if the applicant does not designate classes, "the Office will do so." TMEP Section 1401.03(b) (emphasis added). The TMEP also provides that amendment or correction of classification may be made by examiner's amendment without prior authorization by applicant or its attorney. Id.

In this case, the examining attorney acknowledged that the Office incorrectly classified applicant's goods in a service class. Throughout prosecution, the examining attorney consistently indicated that Class 25 was the proper class for applicant's "costumes," irrespective of whether such an identification is definite enough. If the

Office will correct an applicant's error when applicant incorrectly classifies goods in a service class, then surely the Office is able to correct its own such error. Moreover, in its request for reconsideration, applicant amended the classification of its goods to Class 25. While the examining attorney rejected the proposed amended identification, because of asserted indefiniteness of a portion thereof, there was no basis for the examining attorney to reject applicant's amendment of the classification.[8]

While the question of classification is therefore settled – the goods are classified in Class 25 – and is not an issue on appeal, the identification is an issue on appeal. As already noted herein, this issue was first addressed in the second office action. The examining attorney wrote, "The wording in the identification ['costumes'] is unacceptable as indefinite. TMEP Section 1402.01." A suggestion was made that applicant's "costumes" be specified by type, "e.g., Halloween, masquerade and/or costumes for use in role-playing games."

---

[8] It is possible the examining attorney thought class 25 might not be the correct class for "custom costumes," if by those words the applicant intended to indicate that it offers some sort of custom manufacturing services. We can only guess about this, however, because the examining attorney did not explain why "custom costumes" was viewed as indefinite.

In the third office action, the examining attorney quoted from the second office action and, responding to applicant's contention that "costumes" is a definite identification, added, "The applicant is respectfully advised that, if the term 'costumes' was definite enough, the examining attorney would not have specifically stated in the second non-final Office action that said term was indefinite and would not have required amendment of the same." Apart from referring applicant to TMEP Section 1402.01 and to the Office's ID manual, the examining attorney's third office action also referred applicant to "a detailed discussion of this Office's authority and rationale for requiring a specific identification of goods or services in an application, *see Skoler, Trademark Identification - Much Ado About Something?*, 76 Trademark Rep. 224 (1986)."

Applicant's arguments in response to the requirement for a more definite identification, made in the second and third office actions, were set forth earlier in this opinion. As noted in that part of this opinion, the examining attorney was not convinced by applicant's arguments to withdraw the requirement and made the requirement final. While the second and third office actions explain the Office's authority to require a

11

definite identification of goods and refer applicant to explanatory material, the examining attorney did not set forth any particular rationale for the requirement in this case, i.e., the examining attorney did not explain precisely why "costumes" is indefinite.  Two possible explanations are (1) the examining attorney's assertion in the final refusal that "the fact that the broad identification 'costumes' is not listed in [the ID manual] means exactly that 'costumes' is not specific enough," and (2) the examining attorney's statement in the Office's appeal brief that "the identification of goods is broad and could include goods classified in other international classes (e.g., 'doll costumes' in International Class 28). TMEP §§1402.01 and 1402.03."

The first of these rationales for the requirement that "costumes" be amended, i.e., the contention that the absence of that term from the Office's ID Manual "means exactly that 'costumes' is not specific enough," is not true.  The manual's "listing is not exhaustive" and the Office acknowledges that, "No listing could include all possible identifications for the multitude of products and services for which marks may be registered."  TMEP Section 1402.04.  See also, <u>Examination Note 98/1 Classification</u>

and Identification of Goods and Services Issues (available

at the Office's web page via

http://www.uspto.gov/web/offices/tac/notices/notices.htm):

> … If an ID satisfactorily accomplishes these
> needs for clarity, classification and scope, it
> should be accepted *even if the language proposed*
> *by the applicant doesn't appear in the ID Manual.*[9]
> (emphasis added)

The second rationale for the examining attorney's

conclusion that "costumes" is not sufficiently definite,

i.e., that it could include goods outside Class 25, was set

forth for the first time in the examining attorney's brief.

In particular, although the examining attorney cited to

several sections of the TMEP in various office actions, it

was only in the appeal brief that citation was made to that

section of the TMEP (§1402.03) that explains that a term in

an identification of goods is not sufficiently definite if

it could clearly include items in more than one class.  It

is poor examination practice not to make all the evidence

and arguments of record during examination, before the

briefing stage.  See In re Red Bull GmbH, 78 USPQ2d 1375,

---

[9] Subsequent to Examination Note 98/1, Examination Guide 3-00
General Guidelines for Acceptable Identifications of Goods and
Services, reiterated the point that an identification generally
will be acceptable if, among other requirements, it "Meets the
*standards* (not necessarily the language) set forth in the US ID
Manual" (emphasis in original).  This Examination Guide is
currently codified in TMEP Section 1402.01(a).

1378 n.4 (TTAB 2006) ("The preferable procedure would have been, of course, for the definitions and arguments in connection therewith to have been submitted during examination."). Nonetheless, the Board normally will consider all arguments set forth by an applicant or examining attorney in an appeal brief; and we note that an applicant has the option of filing a reply brief to object to an examining attorney's late-raised argument.

Because there was no correct rationale advanced during examination for the examining attorney's requirement that "costumes" be amended, we consider the unstated but implied explanations that may be gleaned from the examining attorney's references to particular sections of the TMEP and, in addition, from our own review of Office examination guides and notes.

TMEP Section 1402.01 states, in part:

A written application must specify the particular goods or services on or in connection with which the applicant uses, or has a bona fide intention to use, the mark in commerce. … To "specify" means to name in an explicit manner. The identification of goods or services should set forth common names, using terminology that is generally understood. …

The language used to describe goods or services should be understandable to the average person and should not require an in-depth knowledge of the relevant field.

TMEP Section 1402.03, which acknowledges that "[a]pplicants frequently use broad terms to identify" goods or services, includes discussion of general guidelines for identifications, many of which focus on the commercial significance of terms. For example (emphasis added): "[w]hen a mark is used on a number of items that make up a homogeneous group, a term that identifies the group as a whole would be understood as encompassing products of the same general type that are *commercially related*"; and "the conclusion that a term would clearly include items classified in more than one class [and is therefore unacceptable as indefinite] should not be drawn unless reasonable, in light of the *commercial relationships* between all the goods or services identified in the application"; and that a term "sufficient for purposes of according a filing date" may nonetheless be "too indefinite to enable proper examination" if "the term does not have a particular *commercial meaning*."

Apart from assessing the commercial significance of a term, the Office is also concerned with clarity, ensuring proper classification, and the scope of protection a registration utilizing a particular term would carry:

> When assessing whether an identification of goods
> or services is acceptable, the following concepts
> should be considered: 1. Clarity: Would a non-

15

expert in the field of trademarks or in the field of the applicant's goods or services understand what the item or the activity is? 2. Classification: Is there language in the ID that makes classification difficult or ambiguous; are the goods or services clearly in a single class? 3. Scope: Is the scope of protection that would be provided by a registration clear, that is, does the language of the ID adequately define the parameters of the goods or services in the application?
Examination Note 98/1, supra.

The focus on clarity and proper classification is also present in Examination Guide 3-00/TMEP Section 1402.01(a):

With few exceptions, an identification of goods and services will be considered acceptable if it is:
- Written in English
- Describes the goods and/or services so that an English speaker could understand what the goods and/or services are even if the grammar or phrasing isn't optimal …
- Not a class heading
- In the correct class

The examining attorney would have us apply these guidelines to the identification "costumes," rather than the identification set forth in applicant's request for reconsideration: "Costumes, namely masquerade costumes, Halloween costumes, Mardi Gras costumes, and custom costumes, in International Class 25."  Clearly, the proposed amended identification sets forth four specific items, the first two of which ("masquerade costumes" and "Halloween costumes") are listed in the Office's ID manual

16

and therefore are acceptably definite.  The examining attorney, in denying the request for reconsideration, did not object to "Mardi Gras costumes" as indefinite and we consider that item just as definite as the first two. Accordingly, the only support for the examining attorney's argument that we must consider "costumes" to be the operative identification is the theory that if "custom costumes" is indefinite, then the entire amended identification proposed in the request for reconsideration must be rejected, notwithstanding that the majority of it is clearly definite and in keeping with the suggestions made by the examining attorney in prior office actions.  We disagree.

TMEP Section 715.02 states (emphasis added):  "An amendment [proposed after a final refusal of registration] that will place the application in condition for publication or issue, *or will put the application in better form for appeal*, may be accepted and entered."  Under the circumstances, we find applicant's proposed amended identification to be just such an amendment.  The examining attorney would have us consider as an issue in this appeal the question whether "costumes" is definite enough. Applicant no longer is arguing, even in the alternative, that "costumes" per se is a definite identification.

17

Accordingly, there is no reason for the examining attorney or the Board to discuss the subject. The application is in better form for appeal with the amended identification and the examining attorney could have accepted this amendment while still maintaining that the asserted indefiniteness that shrouded "costumes" remains for "custom costumes."

As already noted, we consider the operative identification to be that set forth by applicant in its request for reconsideration, but to the extent there is any doubt on the point, we reverse the examining attorney's decision to reject the proposed amended identification. We therefore need only consider whether "Costumes, namely masquerade costumes, Halloween costumes, Mardi Gras costumes, and custom costumes" is sufficiently definite as an identification. Further, under the analytical precepts set forth in the TMEP and Examination Note 98/1, we find the identification is sufficiently definite.

The identification uses common names and terminology that would be generally understood by an average person able to speak English; in short, the identification meets the standards of TMEP Section 1402.01(a) and the clarity test of Examination Note 98/1, and one would not require technical knowledge to understand it.

18

We also find the goods all to be properly classified in International Class 25, without any terms that make classification difficult or ambiguous.  Cf. In re Omega SA, ___ F.3d ___, ___ USPQ2d ___ (Fed. Cir. 2007) (No. 2006-1234; slip op. at p. 6, available at www.fedcir.gov) ("the scope of the term 'chronographs' is ambiguous for registration purposes").  We note, in particular, that the examining attorney, although characterizing "custom costumes" as indefinite, did not say that such conclusion was based on any ambiguity in the term that would make classification difficult.[10]  We note, too, the following statements in TMEP Section 1402.03:

> the conclusion that a term would clearly include items classified in more than one class [and is therefore unacceptable as indefinite] should not be drawn unless reasonable, in light of the commercial relationships between all the goods or services identified in the application.
> …
>
> Many goods are commonly understood to move in a particular channel of trade or have particular attributes. When those goods are classified in the class that is appropriate for that common understanding, very often no further specification as to the nature of those goods is necessary.

---

[10] The examining attorney also did not state that the term was beyond the scope of the original identification of "costumes."

Considering the term "custom costumes" in relationship to the other types of clothing costumes set forth in the identification (in contrast to, for example, considering the term in relationship to doll costumes), all of the recited clothing costumes would be commonly understood to be similar items moving in a particular channel of trade.[11]

Finally, we also find the amended identification to clearly indicate the scope of protection that would be provided by the registration. In this regard, we acknowledge that the office's ID manual includes in its listing certain types of clothing "costumes," e.g., bathing costumes and swimming costumes, that are more clothing items than masquerade, Halloween or role-playing items. Moreover, we acknowledge that certain dictionary

---

[11] As alluded to in an earlier footnote, we acknowledge that use of the word "custom" might be taken to indicate that the applicant is engaged in some sort of custom manufacturing service, notwithstanding that the examining attorney did not assert any such concern. We also note, however, that this is an application based on applicant's stated intention to use its mark in commerce and has not been amended to assert actual use or to include any specimens of use. Any issue regarding whether the applicant will eventually use its mark as a trademark for custom clothing costumes being sold in the same manner and channels of trade as other non-custom clothing costumes, or use its mark as a service mark for some sort of custom manufacturing service is not now before us. It is clear, however, that if applicant eventually prevails in its appeal from the refusal of registration under Section 2(d), any specimen it later submits would have to support use of the mark as a trademark for the clothing goods of "custom costumes," and registration of the mark as a trademark could not be based on use of the mark as a service mark.

definitions of the word costume are more reflective of clothing items: "the chiefly outer garments worn by a person at any one time; esp : a woman's ensemble of dress with coat or jacket."[12] Reading the involved identification as a whole, however, and considering "custom costumes" in conjunction with the other items listed, we would not find the term to extend the scope of protection provided by the registration to encompass custom-made swimsuits, or ensembles, and instead find it to encompass custom-made items such as masquerade costumes, Halloween costumes and Mardi Gras costumes.

In sum, we consider applicant to have complied with the examining attorney's requirement to adopt a sufficiently definite identification.

### Likelihood of Confusion

We now turn to the substantive refusal of registration under Section 2(d) of the Trademark Act. As noted, applicant's mark has been refused registration in view of the prior registration of PAPER DOLL in standard character form for various items of children's and women's clothing, and the prior registration of PAPERDOLL A WOMAN BY ANY

---

[12] We take judicial notice of this definition from Webster's Third New International Dictionary (1993) at p. 515. See University of Notre Dame du Lac v. J.C. Gourmet Food Imports Co., 213 USPQ 594 (TTAB 1982), aff'd, 703 F.2d 1372, 217 USPQ 505 (Fed. Cir. 1983).

DEFINITION and design for "clothing, namely, t-shirts and underwear."

We analyze the issue of likelihood of confusion using the factors that were articulated by a predecessor of our primary reviewing court, the Court of Customs and Patent Appeals, in the case of In re E. I. du Pont de Nemours & Co., 476 F.2d 1357, 177 USPQ 563, 567 (CCPA 1973). See also In re Majestic Distilling Co., supra.

In any likelihood of confusion analysis, two key, although not exclusive, considerations are the similarities of the marks and the similarities of the goods or services. Federated Foods, Inc. v. Fort Howard Paper Co., 544 F.2d 1098, 192 USPQ 24, 29 (CCPA 1976)("The fundamental inquiry mandated by Section 2(d) goes to the cumulative effect of differences in the essential characteristics of the goods [or services] and differences in the marks").

In this case, there are differences between the marks in the cited registrations and each will compare differently to applicant's mark. However, the two cited registrations cover similar goods and we consider that subject first.

The registration for PAPERDOLL A WOMAN BY ANY DEFINITION and design is for "clothing, namely, t-shirts and underwear." The registration for PAPER DOLL covers a

22

wider array of clothing items, but these items are items of children's sportswear and women's wearing apparel.  In any event, the question presented by the refusal of registration is not whether the items in the two cited registrations are similar, but whether consumers familiar with the marks used for these clothing items, upon encountering the mark PAPER DOLL PROMOTIONS as a mark for various types of costumes, would conclude that the clothing items and costumes have a common source or sponsorship.  In other words, would consumers familiar with branded goods of the registrants consider applicant's goods to be related to the goods of one or both of the registrants?

To establish that the goods in the cited registrations and in applicant's application are related, the examining attorney has submitted for the record 25 third-party registrations based on use of the registered marks in commerce, and excerpts from four internet websites.  Of the 25 third-party registrations, 22 cover various clothing items and "Halloween costumes," or "masquerade costumes," or "costumes for use in role-playing games."[13]  As the examining attorney has explained, third-party registrations

---

[13] Three of the third-party registrations do not list specific types of costumes but, rather, include the term "costumes" in lists of clothing items.

23

which individually cover a number of different items and which are based on use in commerce may serve to suggest that the listed goods are of a type that may emanate from a single source. See In re Albert Trostel & Sons Co., 29 USPQ2d 1783 (TTAB 1993); In re Mucky Duck Mustard Co., 6 USPQ2d 1467, 1469 (TTAB 1988), aff'd in unpublished opinion 88-1444 (Fed. Cir. 11/14/1988). In addition, the internet websites are probative evidence that the four on-line retailers are each the source of various clothing items and various role-playing or fantasy costumes. We find this evidence sufficient to establish that applicant's goods and the goods in the cited registrations are related for purposes of likelihood of confusion.

As for the marks in the two cited registrations, each is to be compared with applicant's mark in regard to appearance, sound when spoken, connotation and overall commercial impression. Palm Bay Imports Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772, 396 F.3d 1369, 73 USPQ2d 1689, 1692 (Fed. Cir. 2005). In our comparison of the marks, and in our articulation of reasons for reaching a conclusion on the issue of likelihood of confusion, "there is nothing improper in stating that, for rational reasons, more or less weight has been given to a particular feature of a mark, provided the ultimate conclusion rests

on consideration of the marks in their entireties. Indeed, this type of analysis appears to be unavoidable." In re National Data Corp., 732 F.2d 1056, 224 USPQ 749, 751 (Fed. Cir. 1985).

Comparing applicant's mark PAPER DOLL PROMOTIONS with the PAPER DOLL mark in cited registration no. 2375912, we find the marks to be identical in appearance and pronunciation, but for applicant's addition of the term PROMOTIONS. PAPER DOLL is the entirety of the mark in the cited registration and is the dominant element of applicant's mark. It is dominant because it comes first and "it is often the first part of a mark which is most likely to be impressed upon the mind of a purchaser and remembered." Presto Prods., Inc. v. Nice-Pak Prods., Inc., 9 USPQ2d 1895, 1897 (TTAB 1988) (opposer's mark KID STUFF and applicant's mark KIDWIPES found similar). PAPER DOLL is also the dominant portion of applicant's mark because it is a unitary term and is essentially arbitrary when considered in conjunction with applicant's goods[14], whereas PROMOTIONS would be perceived more along the lines of "enterprises" or similar terms indicative of a business.

---

[14] We take judicial notice that "paper doll" is defined as "a paper or cardboard representation of a person usu. in two dimensions for children to play with." Webster's Third New International Dictionary (1993) at p. 1633. See University of Notre Dame du Lac, supra.

Because PAPER DOLL would have the same essentially arbitrary connotation when used in conjunction with the various clothing items listed in the cited registration for PAPER DOLL and for applicant's goods, we find the connotation of PAPER DOLL and PAPER DOLL PROMOTIONS to be essentially the same. The overall commercial impressions of the marks would also be the same.

We also note that there is nothing in the identification of goods of the cited registration for PAPER DOLL or of the involved application that would limit channels of trade or classes of consumers for the goods. Therefore, applicant's various costumes could be marketed to women and children just as readily as the clothing items in the cited registration. We have found the goods in the cited registration for PAPER DOLL and the goods in the application for PAPER DOLL PROMOTIONS to be related for likelihood of confusion purposes, the marks to be similar in sound and appearance and to have the same connotation, and the classes of consumers to overlap. We conclude that the contemporaneous use of the marks for the respective goods would be likely to cause confusion or mistake among such consumers. We therefore affirm the refusal of registration based on cited Registration No. 2375912.

In contrast, we reverse the refusal of registration based on cited Registration No. 2832820. That registration does not present as strong a case for refusal as does the PAPER DOLL registration.

First, the mark PAPER DOLL A WOMAN BY ANY DEFINITION and design would not be pronounced the same as PAPER DOLL PROMOTIONS, except for the common term PAPER DOLL; and the marks are not similar visually because of the prominent design element in the registered mark. Moreover, the connotation of the registered mark is different from the connotation of PAPER DOLL PROMOTIONS. The registered mark has the connotation of a woman, perhaps one referred to as a "paper doll," whereas applicant's mark does not.

The goods in cited Registration No. 2832820 are particular clothing items, specifically, t-shirts and underwear. These items are related to applicant's various costumes, for the purpose of analyzing likelihood of confusion, for the same reasons that the goods in the other cited registration were found to be related to applicant's goods, i.e., because of the third-party registration and internet evidence. Nonetheless, consumers familiar with PAPER DOLL A WOMAN BY ANY DEFINITION and design branded goods would not be conditioned to expect a wide array of clothing items to be marketed under the mark. Therefore,

27

when such consumers would subsequently be exposed to PAPER DOLL PROMOTIONS branded costumes, there is only a slight chance these consumers would draw a connection between applicant's goods and registrant's goods.[15]

In short, because of differences between applicant's mark and the mark PAPER DOLL A WOMAN BY ANY DEFINITION and design, and because the registered mark is registered for very limited and specific items, we find that confusion among consumers, while possible, is not likely. The Trademark Act does not prevent registration of a mark on the mere possibility of consumer confusion, but requires that confusion be likely. See Bongrain International (American) Corporation v. Delice de France Inc., 811 F.2d 1479, 1 USPQ2d 1775, 1779 (Fed. Cir. 1987); In re The Ridge Tahoe, 221 USPQ 839, 840 (TTAB 1983). Accordingly, we reverse the refusal of registration based on the registered mark PAPER DOLL A WOMAN BY ANY DEFINITION and design.

We note that applicant argued against both refusals, but did not persuade us that both should be reversed.

---

[15] In contrast, consumers familiar with the registered PAPER DOLL mark, which is much more similar to applicant's mark and is registered for a wider array of goods, would be much more likely to assume applicant's costumes were somehow sponsored by or associated with the source of numerous PAPER DOLL clothing items. In other words, consumers would find it much more plausible that the registrant of the PAPER DOLL mark had bridged the gap from clothing items to costumes.

Applicant did not differentiate between the cited registrations, as we have. Rather, applicant essentially has relied on its assertion that clothing items are different from costumes, that the co-existence of the two cited registrations militates against the refusals, and that there are other marks that the USPTO has approved for registration that include the term PAPER DOLL.

As to the last point, applicant has not provided any copies of these purported registrations and has provided only the serial number of a single abandoned application. As for the co-existence of the cited marks, we do not find this persuasive evidence that we should reverse the refusal as to both cited registrations. As can be gleaned from our decision, we find the commercial impressions of the two cited marks to differ somewhat. Even if they presented the same commercial impressions, our decision on the registrability of applicant's mark must be based on the record in this case and not on the fact that two arguably similar marks have been allowed for registration by the Office. See In re Nett Designs Inc., 236 F.3d 1339, 57 USPQ2d 1564 (Fed. Cir. 2001). Finally, the differences between the goods is an issue we have addressed in detail in this decision. In short, applicant's cursory arguments against the refusal of registration do not persuade us that

we should not affirm the refusal of registration, as we have, based on the PAPER DOLL registration.

***Decision***

The examining attorney's requirements for an amended identification and amendment of classification are reversed, as both have been provided.  The refusal of registration under Section 2(d) based on Registration No. 2832820 is reversed.  The refusal of registration under Section 2(d) based on Registration No. 2375912 is affirmed.